# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

C-SPINE ORTHOPEDICS, PLLC v PROGRESSIVE MICHIGAN INSURANCE COMPANY

WALLACE v SUBURBAN MOBILITY AUTHORITY FOR REGIONAL TRANSPORTATION

Docket Nos. 165537, 165538, and 165964. Argued on application for leave to appeal on November 13, 2024. Decided July 3, 2025.

In Docket Nos. 165537 and 165538, C-Spine Orthopedics, PLLC, filed two actions in the Macomb Circuit Court against Progressive Michigan Insurance Company, seeking to recover personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq*., for care C-Spine provided to Progressive's insureds, Jose Cruz-Muniz and Sandra Cruz, for injuries Jose and Sandra sustained in 2018 as a result of a motor vehicle collision (the C-Spine case). Jose and Sandra assigned their rights to seek PIP benefits from Progressive to C-Spine, and C-Spine initiated two first-party no-fault actions under MCL 500.3112, as amended by 2019 PA 21 (granting medical providers a direct cause of action to claim benefits under the no-fault act). However, before bringing the actions, C-Spine had entered into agreements with several factoring companies, which bought C-Spine's "accounts receivable"—including the claims for unpaid benefits here—at a discounted rate. Progressive moved for summary disposition, arguing that C-Spine lacked standing to seek payment of Jose and Sandra's benefits because it had assigned its rights to those benefits to the factoring companies, and therefore, C-Spine was not the real party in interest. C-Spine responded by producing signed counter-assignments and "purchase agreement amendments" from the factoring companies that purportedly restored C-Spine's right to bring suits seeking payment of outstanding balances. The court, Jennifer M. Faunce, J., initially denied the motion but later granted it, concluding that C-Spine lacked standing when the complaints were filed. On appeal, the Court of Appeals, GLEICHER, C.J., and PATEL, J. (MARKEY, J., dissenting), reversed the trial court's order granting summary disposition to Progressive, reasoning that C-Spine, as a medical provider, retained its claims for PIP benefits under MCL 500.3112, even though the "beneficial interest" in the claims had been assigned to the factoring companies. 344 Mich App 626 (2022). Progressive sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on whether to grant Progressive's application for leave to appeal. 512 Mich 928 (2023).

In Docket No. 165964, Parie Wallace filed an action in the Wayne Circuit Court against Suburban Mobility Authority for Regional Transportation (SMART) and Janet Szczotka, seeking to recover PIP benefits under the no-fault act (the Wallace case); Szczotka was not involved in the

appeal. Wallace was injured on October 2, 2019, during a collision that occurred while she was a passenger on a bus owned and operated by SMART. Wallace received treatment or services from C-Spine Orthopedics and several other providers. Wallace executed assignments of benefits to the various providers between October 2019 and January 2020. Wallace then filed her action on May 27, 2020, seeking payment from SMART of PIP benefits for the treatment she received for her injuries. SMART moved for summary disposition, arguing that Wallace could not bring the action because she had assigned her rights to pursue benefits to the providers. The court, Kathleen M. McCarthy, J., deferred its ruling on the motion to allow Wallace to obtain revocations of the assignments from the medical providers. Wallace then obtained what she termed "mutual rescissions" from all of her providers, which were executed in January 2022. Relevant to this case, the trial court denied SMART's motion for summary disposition. SMART appealed by leave granted, and the Court of Appeals, MARKEY, P.J., and JANSEN and K. F. KELLY, JJ., reversed, in relevant part, the court's denial of SMART's motion for summary disposition. The Court of Appeals reasoned that Wallace could not have properly filed suit at the time she filed her complaint because she was no longer the real party in interest and that by the time the assignments were revoked, the claims were barred by MCL 500.3145(2), the one-year-back rule. 347 Mich App 380 (2023). Wallace sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on whether to grant Wallace's application for leave to appeal. 513 Mich 905 (2023).

In an opinion by Justice WELCH, joined by Chief Justice CAVANAGH and Justices BERNSTEIN and BOLDEN, in lieu of granting leave to appeal, the Supreme Court *held*:

Although a failure to bring suit in the name of the real party in interest is a ground for dismissal, such a failure does not *necessarily* lead to dismissal. Instead, in some circumstances, it is possible for a plaintiff to cure this defect by taking some action in the litigation that would allow the court to assess the effect of the changes in parties. After the plaintiff takes such action, the court may then consider whether the correction of the real party in interest defect may relate back to when the original complaint was filed, or whether the suit will be barred by the running of the statutory period of limitations or the one-year-back rule. Thus, the one-year-back rule does not affect whether a plaintiff is a real party in interest, though it may bar recovery. Rescission of a contract subject to litigation does not function by automatic operation of the law. Instead, rescission is an equitable remedy that the trial court may grant, in its discretion, after balancing the equities. Courts must consider these same equitable considerations when deciding whether to extend the effect of a rescission to a third party. If the court recognizes a rescission, it is as if the contract at issue never existed. In these cases, both C-Spine and Wallace had standing to file their respective lawsuits; however, they were not real parties in interest at the time they filed suit because they had previously assigned away their claims for PIP benefits. In the C-Spine case, the Court of Appeals' judgment was affirmed on alternate grounds and the case remanded to the trial court for further proceedings and for consideration of whether C-Spine could cure the real party in interest defect. In the Wallace case, the Court of Appeals' judgment was affirmed in part, reversed in part, and vacated in part, and the case was remanded for the trial court to consider whether equitable rescission was warranted under the facts of the case and whether the real party in interest defect that existed at filing could be cured.

1. An assignment of rights occurs when the assignor transfers their rights or interests to the assignee; it is an absolute transfer of the claim at issue that extinguishes the assignor's rights. Though an assignment is absolute with respect to the rights assigned away, there is flexibility in the scope of what is assigned. A claim may be assigned for collection purposes, allowing the assignee to litigate the claim and reserving to the assignor the right to proceeds recovered. When an assignment is such that satisfaction of the judgment obtained by the assignee will discharge the defendant from their obligation to the assignor, for the purpose of the suit, the assignee is the real party in interest and may maintain an action in their own name.

2. Rescission of a contract subject to litigation does not function by automatic operation of the law. Instead, rescission is an equitable remedy that the trial court may grant, in its discretion, after balancing the equities. These same equitable considerations apply to a court's decision to extend the effect of a rescission to a third party. If the court recognizes a rescission, it is as if the contract at issue never existed.

3. While the real party in interest rule and standing doctrine function similarly in practice, they are derived from different sources and serve different purposes. "Standing" refers to the right of a plaintiff to invoke the power of a trial court to adjudicate a claimed injury; thus, standing must be established at the time a complaint is filed. A litigant has standing whenever there is a legal cause of action. In contrast, the real party in interest rule derives from statutes and court rules. MCL 600.2041 mandates in part that every action must be prosecuted in the name of the real party in interest. In tandem with that provision, MCR 2.201(B)(1) provides that an action must be prosecuted in the name of the real party in interest but that a "personal representative, guardian, conservator, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a person authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought." Statutes that require every action to be prosecuted in the name of the real party in interest are enacted to protect a defendant from being harassed by multiple suits for the same cause of action. However, as long as the final judgment, when and if obtained, is a full, final, and conclusive adjudication of the rights in controversy that may be pleaded to bar any further suit instituted by any other party, the defendant is not harmed. This reasoning parallels the explanations provided for the federal real party in interest rule. The real party in interest status of a party is initially assessed at the time a complaint is filed. Although a failure to bring suit in the name of the real party in interest is a ground for dismissal, it does not follow that a suit originally filed in the name of someone other than the real party in interest must necessarily be dismissed. Instead, it is possible, in some circumstances, for a plaintiff to cure this defect. However, a plaintiff may not fix real party in interest defects by taking unilateral actions outside of court. Rather, to cure such a defect, a plaintiff must take some action in the litigation that would allow the court to assess the effect of the changes in parties. For example, a plaintiff could amend their complaint to join or substitute the proper plaintiff; the real party in interest could intervene in the action; or a plaintiff could file an amended complaint reflecting the fact that they have become the real party in interest through an assignment. In each instance, the court may then consider under MCR 2.118(D) whether the correction of the real party in interest defect may relate back to when the original complaint was filed, or whether the suit will be barred by the running of the statutory period of limitations or the one-year-back rule. Accordingly, the one-year-back rule does not affect whether a plaintiff is a real party in interest, though it may bar recovery.

4. In the C-Spine case, C-Spine, as a medical provider, had standing to file this direct cause of action for PIP benefits under MCL 500.3112. C-Spine assigned the proceeds of the relevant claims to the factoring companies but did not preserve the right to litigate the assigned claims. C-Spine's argument that it retained the right to litigate the claims was without merit given the clear language of the assignments. Thus, C-Spine was not the real party in interest when it filed its complaints, and the Court of Appeals erred by holding otherwise. Instead, C-Spine became the real party in interest when it received the counter-assignments. The Court of Appeals' judgment was therefore affirmed, but on alternate grounds. On remand, C-Spine must take proper steps in the trial court, such as by amending its complaints to reflect the counter-assignments, to fully cure its real party in interest defects, and the trial court must then consider the effect of this change and whether its status relates back to when C-Spine originally filed these actions. The Supreme Court affirmed the judgment of the Court of Appeals, affirmed its disposition, and remanded the case for further proceedings.

5. In the Wallace case, Wallace, as the policyholder, had standing under MCL 500.3112 when she filed her lawsuit, but she was not the real party in interest at that time because she had already assigned her rights to PIP benefits to her medical providers. However, her real party in interest status was restored when she obtained the "mutual rescissions" from those providers. While courts may extend a mutual rescission to third parties as an equitable remedy, Wallace and her medical providers could not unilaterally declare a rescission and apply its effects retroactively to ongoing litigation with third parties (here, with SMART). The trial court erred by accepting the rescissions and allowing the case to proceed without first balancing the equities, which an equitable rescission would require. The Court of Appeals correctly concluded that Wallace was not the real party in interest after she assigned away her claims to the medical providers. But the Court of Appeals erred when it held that Wallace did not have standing and that she could not attempt to reobtain her status as a real party in interest after obtaining the mutual rescissions. The Supreme Court remanded the case to the trial court to consider whether equitable rescission should apply to the case and whether the real party in interest defect that existed at filing could be cured. To the extent the Court of Appeals treated the mutual rescissions as revocations, the Supreme Court vacated the Court of Appeals' holding that, if Wallace had revoked her assignments, then her claims would be barred by MCL 500.3145(2).

In the C-Spine case, Court of Appeals judgment affirmed on alternate grounds and case remanded to the trial court for further proceedings. In the Wallace case, Court of Appeals judgment affirmed in part, reversed in part, and vacated in part, and case remanded to the trial court for further proceedings.

Justice WELCH, concurring, agreed fully with her majority opinion but wrote separately to explain that, consistent with her statement in *Centria Home Rehab, LLC v Allstate Ins Co*, ___ Mich ___; 12 NW3d 387 (2024) (WELCH, J., dissenting), many of the Court's recent decisions involving the no-fault act are inconsistent with the reasoning of *Andary v USAA Cas Ins Co*, 512 Mich 207 (2023). Medical providers providing services to patients who were injured before the 2019 no-fault amendments should not be able to use the new direct cause of action provided by MCL 500.3112, as amended. Jose and Sandra were injured before the 2019 amendments to the no-fault act went into effect. Their right to PIP benefits therefore vested under the preamendment

version of the no-fault act, and the former version therefore governed their claims to benefits. Justice WELCH agreed that the analysis in the majority opinion applied fully to claims arising after the effective date of the 2019 no-fault amendments. But because the parties did not dispute that the amended version of MCL 500.3112 applied and her colleagues did not agree with her conclusion in *Centria*, Justice WELCH assumed in her majority opinion that the amended statute applied to the parties' claims.

Justice ZAHRA, dissenting, disagreed that defects in real party in interest status may be cured after the filing of a lawsuit. Contrary to the majority's assertion, this proposition was not supported by ample authority. Common sense, reason, and logic dictate that an action should be litigated by the real party in interest. While some older Michigan caselaw cited by the majority opinion suggested defects concerning the real party in interest may be cured, the Court's most recent authority on the issue—*Miller v Chapman Contracting*, 477 Mich 102 (2007)—was persuasive and made clear that litigation should be commenced only by the real party in interest. While parties may assign or counter-assign rights and a contract may be revoked or rescinded, those actions merely create new rights for the parties involved; they do not restore rights to make valid a lawsuit that is subject to dismissal for want of the real party in interest. Further, in exercising its equitable powers, a trial court cannot impose the effect of a rescinded contract on a third party that is not involved with the rescinded contract. Thus, it was immaterial whether Wallace rescinded her assignments because, even if they were rescinded, Wallace could not pursue her litigation as the real party in interest against SMART and Szczotka because they were nonparties that were wholly uninvolved with the assignment contracts. Justice ZAHRA agreed with the majority that both C-Spine and Wallace had standing to file their respective actions, that they were not real parties in interest at that time because they had previously assigned away their claims for PIP benefits, and that the one-year-back rule does not affect whether a plaintiff is a real party in interest, though it may bar recovery. However, Justice ZAHRA would have held that litigation must be started by the real party in interest and that any attempt to restore real party in interest status to a plaintiff who commences litigation without such status must fail. Under that analysis, Justice ZAHRA would have affirmed the Court of Appeals in the Wallace case and would have reversed the Court of Appeals in the C-Spine case.

Justice THOMAS and Justice HOOD did not participate because the Court considered this case before either assumed office.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 3, 2025

STATE OF MICHIGAN

SUPREME COURT

C-SPINE ORTHOPEDICS, PLLC,

      Plaintiff-Appellee,

v

      Nos. 165537-8

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

      Defendant-Appellant.

---

PARIE WALLACE,

      Plaintiff-Appellant,

and

AFFILIATED DIAGNOSTIC OF OAKLAND and
ONE STEP REHAB LLC,

      Intervening Plaintiffs,

v

      No. 165964

SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION,

Defendant-Appellee,

and

JANET SZCZOTKA,

Defendant.

_____

BEFORE THE ENTIRE BENCH (except THOMAS and HOOD, JJ.)

WELCH, J.

In these cases, we consider if and when a patient or medical provider who assigned their claims for personal protection insurance (PIP) benefits to a third party may still file a lawsuit to recover those benefits. In Docket Nos. 165537 and 165538, plaintiff C-Spine Orthopedics, PLLC, a medical provider, assigned its claim to certain PIP benefits to several medical factoring companies. And in Docket No. 165964, plaintiff Parie Wallace assigned some of her claims for PIP benefits to her medical providers. In both cases, after the plaintiffs[1] commenced litigation, the defendant insurers argued that they could not bring suit because, having assigned away their claims, they were no longer the real parties in interest.

Separate panels of the Court of Appeals reached opposing results in these cases. In *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*,[2] the Court of Appeals concluded that C-Spine, as a medical provider, retained its claims for PIP benefits under MCL

_____

[1] When discussing C-Spine and Wallace collectively, we refer to them as "plaintiffs."

[2] *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 344 Mich App 626; 2 NW3d 71 (2022).

500.3112, even though the "beneficial interest" in the claims had been assigned to the factoring companies. However, in *Wallace v Suburban Mobility Auth for Regional Transp*,[3] the Court of Appeals concluded that Wallace, a patient who had assigned her claims to her providers, could not have properly filed suit at the time she filed her complaint because she was no longer the real party in interest and that by the time the assignments were revoked, the claims were barred by the one-year-back rule, MCL 500.3145(2).

We hold that (1) both C-Spine and Wallace had standing to file their respective lawsuits; however, they were not real parties in interest at the time they filed suit because they had previously assigned away their claims for PIP benefits; (2) defects in real party in interest status may be cured after the filing of a lawsuit; and (3) the one-year-back rule, MCL 500.3145(2), does not affect whether a plaintiff is a real party in interest—though it may bar recovery.

In *C-Spine*, we disagree with the Court of Appeals' conclusion that C-Spine remained the real party in interest after assigning away its claims, but we hold that the "counter-assignments"[4] returned C-Spine's real party in interest status—though they did not alone cure the real party in interest defect in this case. Accordingly, we affirm the Court of Appeals' judgment and disposition in *C-Spine* on alternate grounds and remand the case to the trial court for proceedings consistent with this opinion. Our ruling is without

---

[3] *Wallace v Suburban Mobility Auth for Regional Transp*, 347 Mich App 380; 15 NW3d 306 (2023).

[4] The parties use this term to refer to agreements in which an assignee transfers a claim back to the original assignor.

prejudice to either party seeking resolution of other legal issues on remand that have yet to be litigated.

In *Wallace*, we agree with the Court of Appeals' conclusion that Wallace was no longer the real party in interest after assigning away her claims, but we reverse the Court's opinion to the extent that it held that *it would not have been possible* for Wallace to rectify this issue. We vacate its conclusion that if the "mutual rescissions" were revocations, Wallace's claims would be barred by the one-year-back rule. We remand to the trial court to consider whether Wallace's assignments should be equitably rescinded in the first instance.

## I. FACTUAL AND PROCEDURAL BACKGROUND

## A. ASSIGNMENTS IN THE NO-FAULT CONTEXT

Under Michigan's no-fault insurance scheme, it is common for medical providers to seek payment directly from insurance companies for treatment they have provided to injured policyholders. Prior to our 2017 decision in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), the Court of Appeals had long held that medical providers could directly sue insurance companies to recover their patients' PIP benefits. See *id*. at 200-204. However, in *Covenant*, we determined that medical providers had no statutory cause of action to file such suits and overruled all Court of Appeals precedent to the contrary. *Id*. at 217-218. We also suggested—in a footnote— that medical providers could continue to pursue these claims if patients assigned their claims for past or presently due PIP benefits to their medical providers. *Id*. at 217 n 40.

Since *Covenant*, requiring patients to execute assignments—which transfer all rights to bring a claim for PIP benefits to the medical providers—has become a routine

4

practice for many medical providers. In the 2019 amendments to the no-fault act,[5] the Legislature added a direct cause of action for medical providers to seek reimbursement for their services. See MCL 500.3112, as amended by 2019 PA 21. This obviated the original purpose of such assignments. However, as the facts of these cases demonstrate, the practice persists. No-fault litigation continues to involve tangles of assignments, implicating multiple providers and other third-party assignees.

The use of assignments in the no-fault context is further complicated by the one-year-back rule, MCL 500.3145(2), which bars both patients and providers from recovering PIP benefits if a lawsuit is not filed within one year of the day the expenses were incurred. Thus, plaintiffs are left with a limited time to properly bring suit to recover PIP benefits from the insurer.[6]

## B. C-SPINE

Jose Cruz-Muniz and Sandra Cruz were covered by a no-fault insurance policy issued by defendant, Progressive Michigan Insurance Company (Progressive).[7] On May 23, 2018, Jose and Sandra were injured in a car accident. They received treatment

---

[5] MCL 500.3101 *et seq*.

[6] This limitation is now easier for plaintiffs to satisfy because the 2019 amendments added a provision tolling the one-year limitations period "from the date of a specific claim for payment of the benefits until the date the insurer formally denies the claim," provided that the claimant pursues their claim with "reasonable diligence." MCL 500.3145(3).

[7] Jose was the named insured on the policy, while Sandra—his wife—was covered as a household relative. Although C-Spine filed separate complaints under separate docket numbers to obtain payment for Jose and Sandra's benefits, the two cases have been litigated in tandem. As no party suggests that the legal issues before the Court apply differently to Jose or Sandra, we refer to their claims collectively in this opinion.

5

from C-Spine between August 7, 2019 and October 2, 2019 (Jose) or December 18, 2019 (Sandra). Both Jose and Sandra signed forms assigning to C-Spine their rights to collect PIP benefits on each of their respective dates of treatment.

During the period that Jose and Sandra were receiving treatment, C-Spine entered into several agreements that purported to assign its "Accounts Receivable" to factoring companies.[8] Each agreement with the factoring companies consisted of a "Bulk Purchase and Sale Agreement for Accounts Receivable," containing the terms of the deal and a "Schedule of Accounts" listing the accounts receivable that were transferred. These schedules are in the form of large spreadsheets, listing hundreds of services performed for numerous individual patients. C-Spine entered into several of these agreements with different factoring companies on different dates, resulting in a record that, as the Court of Appeals remarked, might "be charitably characterized as messy[.]" *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 344 Mich App 626, 629-630; 2 NW3d 71 (2022). Apparently because of nondisclosure agreements between C-Spine and the various factoring companies, the actual factoring agreements are not part of the record. Instead, these cases have been litigated on the basis of a "sample" agreement, which C-Spine represents to include the same language as the actual agreements.[9]

---

[8] "Factoring is the commercial practice of converting receivables into cash by selling them at a discount." *S & H Packing & Sales Co, Inc v Tanimura Distrib, Inc*, 883 F3d 797, 799 n 2 (CA 9, 2018) (quotation marks and citations omitted).

[9] Progressive does not contest that representation, relying on language from the sample agreement in its arguments before this Court. Accordingly, we proceed under the assumption that the sample agreement is consistent with the actual factoring agreements.

6

Relevant to this case, C-Spine's assignment of Jose and Sandra's benefits to the factoring companies provided:

> Buyer [the factoring companies] shall purchase from Seller [C-Spine], and Seller shall sell, transfer, assign, and convey to Buyer, Seller's Rights, Title, and Interests in the Accounts Receivable identified on the Schedule of Accounts attached hereto as <u>Exhibit A</u>, as well as Seller's Rights, Title, and Interests in each Medical Lien or Letter of Protection connected to any of the Accounts Receivable identified on the Schedule of Accounts attached hereto as Exhibit A. . . . Buyer at all times will retain full legal right to sell, convey, and/or assign the Accounts Receivable purchased from Seller to a third party.

Several other provisions of the sample agreement touched on how the claims would be collected or litigated. A section titled "Servicing" stated that "Buyer will take over servicing of all Accounts without limitation" and that C-Spine "shall not settle, solicit, or accept collections on any of the Accounts Receivable." And another section titled "Power of Attorney" stated that "[i]n order to support the Buyer's collection efforts with regard to the Accounts Receivable, [C-Spine] hereby makes, constitutes, and appoints Buyer, with full power of substitution, its true and lawful attorney in fact, for it and its name, place and stead[.]" Other provisions stated that "Buyer shall have the right to collect all amounts due from a Patient for any treatment, services, or goods received from [C-Spine], including amounts related to accounts receivable not purchased by Buyer," and that C-Spine "shall cooperate in all respects with the collection."

On May 11, 2020, after executing the factoring company assignments, C-Spine filed two first-party no-fault lawsuits against Progressive to collect Jose and Sandra's unpaid PIP benefits. Progressive moved for summary disposition under MCR 2.116(C)(10), arguing that C-Spine lacked standing to seek payment of Jose and Sandra's benefits because it had assigned its rights to those benefits to the factoring companies, and therefore,

7

C-Spine was not the real party in interest. C-Spine responded by producing "counter-assignments" and amendments of previous contracts from the factoring companies purporting to, respectively, reassign the rights to Jose and Sandra's PIP benefits to C-Spine or appoint C-Spine as "servicer" of their accounts receivable. The trial court denied Progressive's motion, noting that although "the factoring companies became the real parties in interest on the transferred accounts" after the original agreements were executed, the counter-assignments resolved this issue by transferring the interests back to C-Spine.

Subsequently, Progressive learned through discovery that the counter-assignments the trial court had relied on—each of which had an effective date, but no execution date—were executed *after* C-Spine had filed its lawsuit.[10] Armed with this new information, Progressive filed another motion for summary disposition on the same grounds as the

---

[10] The counter-assignment agreement as to accounts receivable for Jose has an effective date of May 4, 2020. There are several counter-assignment agreements as to accounts receivable for Sandra; one has an effective date of January 11, 2021, and two have an effective date of January 15, 2020. No date is provided in the signature block for any of the counter-assignment agreements.

Several of our colleagues on the Court of Appeals have criticized C-Spine's behavior during discovery in other cases involving factoring company assignments and counter-assignments. See *C-Spine Orthopedics, PLLC v Progressive Marathon Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued February 9, 2023 (Docket No. 358773) (SERVITTO, J., concurring), pp 1-2; *C-Spine Orthopedics, PLLC v Progressive Marathon Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 14, 2023 (Docket No. 362290) (K. F. KELLY, J., concurring), p 1. Judge MARKEY raised similar concerns regarding C-Spine in her dissenting opinion in this case. See *C-Spine*, 344 Mich App at 639 (MARKEY, J., dissenting) (describing some of C-Spine's transactions as "questionable"). These issues are not before this Court and our decision does not reflect an endorsement of C-Spine's litigation conduct. To the extent that misconduct occurs in discovery, or at any point in litigation, a trial court has the authority to sanction litigants and their counsel. See *Maldonado v Ford Motor Co*, 476 Mich 372, 389; 719 NW2d 809 (2006).

8

first—that C-Spine lacked standing because it had assigned away its rights and was not the real party in interest at the time the lawsuits were filed. This time, the trial court granted Progressive's motion on the basis that C-Spine lacked standing when filing its complaints.

The Court of Appeals reversed, concluding that C-Spine properly brought suit to collect Jose and Sandra's benefits. *C-Spine*, 344 Mich App at 638. It first held that C-Spine had statutory standing to bring its claims under MCL 500.3112, as amended by 2019 PA 21, which granted providers a direct cause of action to collect PIP benefits. *Id*. at 632. It also concluded that the real party in interest rule did not pose an obstacle to C-Spine's suit because MCR 2.201(B)(1) states that " '*a person authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought.*' " *Id*. at 633. In the Court of Appeals' view, MCR 2.201(B)(1) was designed to address C-Spine's situation: MCL 500.3112 authorized C-Spine to bring its claims, and the fact that the "beneficial interest" had moved to the factoring companies was of no moment. *C-Spine*, 344 Mich App at 633.

The Court of Appeals went on to "acknowledge that without the counter[-]assignments, Progressive might have had a legitimate concern that it could face a second lawsuit brought by the factoring companies." *Id*. at 634. The Court of Appeals reasoned that if this were to happen, Progressive's concern could be addressed by joining the factoring companies as necessary parties under MCR 2.205(A). *Id*. It also stated that no second-lawsuit concern was present here because (1) the counter-assignments eliminated the risk that Progressive could be subjected to a second lawsuit on these claims and (2) the Court of Appeals had previously held "that a mid-litigation assignment changed the real party in interest and thereby preserved the plaintiff's original claim." *Id*. at 635, citing *Cannon Twp v Rockford*

9

*Pub Sch*, 311 Mich App 403, 412-413; 875 NW2d 242 (2015). Judge MARKEY dissented, arguing that C-Spine had been divested of any interest in the subject matter of this litigation by its assignment and therefore lacked standing. *C-Spine*, 344 Mich App at 638-639, 662-667 (MARKEY, J., dissenting).

## C. WALLACE

On October 2, 2019, plaintiff Parie Wallace was a passenger on a bus operated by defendant Suburban Mobility Authority for Regional Transportation (SMART). Defendant Janet Szczotka—a motorist who is not involved in this appeal—attempted to change lanes and collided with the bus, injuring Wallace and other passengers. Wallace received treatment or services from several medical providers, including C-Spine Orthopedics, Sierra Surgical, Select Specialists LLC, and Baz Eagle Transportation LLC. In each instance, Wallace executed assignments transferring her right to collect PIP benefits for her treatment to the provider. Though they use different language, the assignments all assign Wallace's rights to reimbursement to her providers and authorize the providers to collect directly from her insurer.[11]

---

[11] Here is a sampling of the assignments' operative language:

C-Spine Orthopedics assignment-of-benefits form signed by Wallace:

I hereby assign, transfer and convey to **C-SPINE ORTHO** (hereinafter "the Provider") all of my rights, title and interest in and to medical expense reimbursement in whatever form, including but not limited to any automobile liability medical expense payments or other health benefits indemnification and/or agreement otherwise payable to me. . . .

I further authorize the Provider to negotiate, collect, and settle any claim with any insurance carrier or other third party payer with regard to these services[.]

After executing these assignments, Wallace filed suit against SMART on May 27, 2020, seeking payment of PIP benefits for the treatment she received for her injuries,

---

Select Specialist LLC assignment-of-benefits form signed by Wallace:

I, the undersigned patient, hereby assign the rights and benefits of insurance of the applicable personal injury protections, medical payments, and/or other insurances to SELECT SPECIALIST LLC for services and/or injuries sustained in the auto accident to the undersigned patient and covered by Personal Injury Protection (PIP) Coverage or other insurance coverage in accordance with Michigan Statute. . . .

This assignment includes, but is not limited to, all rights to collect benefits directly from the insurance company for the service or services that I have received; and all rights to proceed against the insurance company obligated to provide benefits of which I am due.

Baz Eagle Transportation LLC assignment-of-benefits form signed by Wallace:

I, Parie Wallace ("Assignor"), hereby assign to (**Baz Eagle Transportation L.L.C.**) ("Assignee")

All rights, privileges and remedies to payment for health care services, products or accommodations ("Services") provided by Assignee to Assignor to which Assignor is or may be entitled under MCL 500.3101, *et seq*, [sic] the No Fault Act. . . .

\*   \*   \*

As consideration for the Assignment hereby granted, Assignor accepts Assignee's assumption of the burden and/or cost of pursuit of payment (including the costs of litigation) from any person or entityfrom [sic] whom payment for the above referenced is or might be owed under MCL 500.3101, *etseq*, [sic] The No Fault Act. . . .

Assignor understands that should Assignor contract with or retain his/her own counsel to seek his/her own No Fault benefits, that counsel shall have no right to pursue payment of these assigned benefits nor shall counsel be entitled to any payment of an attorney fee from the services provided by Assignee.

11

including the treatment she received from the listed providers. SMART moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), arguing that Wallace did not have the legal right to collect benefits that she had assigned to the providers. The trial court heard oral argument on the motion, but it deferred its ruling to allow Wallace to revoke the assignments. Wallace then obtained what she termed "mutual rescissions" from all her providers, which were executed in January 2022.[12] Soon thereafter, the trial court denied, in relevant part, SMART's motion for summary disposition.

The Court of Appeals granted SMART's interlocutory application for leave to appeal and reversed. *Wallace v Suburban Mobility Auth for Regional Transp*, 347 Mich App 380, 383, 392; 15 NW3d 306 (2023). Relying on another recent Court of Appeals decision, *Farrar v Suburban Mobility Auth for Regional Transp*, 345 Mich App 472; 7 NW3d 80 (2023), the *Wallace* panel stated that " '[w]hen an assignment occurs, the assignee of a cause of action becomes *the real party in interest* with respect to that cause of action, [because] the assignment vests in the assignee all rights previously held by the assignor.' " *Wallace*, 347 Mich App at 386, quoting *Farrar*, 345 Mich App at 481-482. Accordingly, the Court of Appeals concluded that "upon execution of [Wallace's] assignments, [the] providers became the real parties in interest to the claims for benefits, and only the providers could bring an action to recover said benefits." *Wallace*, 347 Mich

---

[12] The agreements with Sierra Surgical and Select Specialists were entitled "Rescission of Assignment" and provided that the assignments were "rescinded and considered void ab initio"; the agreement with C-Spine was entitled "Revocation of Assignment" but stated in the body that the assignment was "rescinded and considered void ab initio"; and the agreement with Baz Eagle Transportation was entitled "Mutual Revocation of Assignment" but stated that the assignment was "mutually revoke[d] and rescind[ed] . . . ."

12

at 389. It also rejected Wallace's attempt to save her suit by relying on the "revocations" of her assignments. Citing another recent decision—*Robinson v Szczotka*, unpublished per curiam opinion of the Court of Appeals, issued April 6, 2023 (Docket No. 359646)—it held that, by the time the rescission agreements were created, "the providers no longer had valid claims for benefits by operation of the one-year-back rule." *Wallace*, 347 Mich App at 390. The Court dismissed Wallace's attempt to analogize this case to *C-Spine*, 344 Mich App 626, finding it distinguishable. *Wallace*, 347 Mich App at 390-391.

## D. PROCEEDINGS BEFORE THIS COURT

In both cases, the losing party in the Court of Appeals sought leave to appeal in this Court. We ordered oral argument on the applications. In *C-Spine*, we directed the parties to address "whether a plaintiff has standing and is a real party in interest if, before filing a cause of action, it had assigned its rights to that cause of action to third parties but, after filing the cause of action, the third parties assign those rights back to it." *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 512 Mich 928, 928 (2023).

In *Wallace*, we directed the parties to address: "(1) whether a plaintiff has standing and is a real party in interest if, before filing a cause of action, she had assigned her rights to that cause of action to her medical providers but, after filing the cause of action, the plaintiff and medical providers rescind the assignments, . . . and (2) the effect, if any, of the one-year-back rule of the no-fault act, MCL 500.3145(2), on the plaintiff's standing and status as a real party in interest." *Wallace v Suburban Mobility Auth for Regional Transp*, 513 Mich 905, 905 (2023).

13

## II. LEGAL STANDARDS

We review de novo a trial court's decision to grant or deny summary disposition. *Wilmore-Moody v Zakir*, 511 Mich 76, 82; 999 NW2d 1 (2023). Likewise, we review de novo questions regarding the interpretation of a statute, *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020), or the common law, *Bertin v Mann*, 502 Mich 603, 608; 918 NW2d 707 (2018). Whether a party has standing or is a real party in interest both involve questions of law and are also subject to de novo review. See *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 574; 957 NW2d 731 (2020); *Cannon Twp*, 311 Mich App at 411.

## III. LEGAL BACKGROUND

The plaintiffs in both cases claim that they have standing and are a real party in interest—regardless of their assignments—because the no-fault act provides a direct cause of action to recover PIP benefits. C-Spine further argues that it only partially assigned its claims to third parties or that its post-litigation counter-assignments resolved any standing or real party in interest issue. Wallace similarly claims that her post-litigation revocation or rescission of assignments resolved these issues.

All defendants argue that plaintiffs lacked standing and were no longer real parties in interest once their claims were assigned away. They further argue that the one-year-back rule, MCL 500.3145(2), prevents plaintiffs' claims from moving forward, but only the Court of Appeals' decision in *Wallace* addressed the rule's application.

We therefore begin with a review of our law regarding assignments, standing and real parties in interest, and the relation back of amendments to complaints.

14

## A. ASSIGNMENTS

"An assignment of rights occurs when the assignor transfers his or her rights or interests to the assignee." *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 284; 983 NW2d 401 (2022). See also *State Treasurer v Abbott*, 468 Mich 143, 150 n 8; 660 NW2d 714 (2003) (noting that an assignment entails a transfer of rights *to another*). "[U]nless in some way qualified, [an assignment] is properly the transfer of one's whole interest in an estate, or chattel, or other thing." *Allardyce v Dart*, 291 Mich 642, 645; 289 NW 281 (1939) (quotation marks and citation omitted). It is an "absolute" transfer of the claim at issue, 9 Corbin, Contracts, § 47.1 (2025), that "extinguishe[s]" the assignor's rights, 3 Restatement Contracts, 2d, § 317(1), pp 14-15. Indeed, this feature is what separates assignments from other legal transfers of claims or benefits. See Corbin, § 47.1 (" 'If the transfer is less than absolute, it is not an assignment[.]' ") (citation omitted).

Consistent with this understanding, Michigan courts have long recognized that a plaintiff who assigns a claim cannot then bring suit to collect on that claim as that plaintiff is no longer the real party in interest. See *Woodley v Lancaster*, 307 Mich 473, 478; 12 NW2d 428 (1943); *Heck v Henne*, 238 Mich 198, 202; 213 NW 112 (1927).

Though an assignment is absolute with respect to the rights assigned away, there is flexibility in the scope of what is assigned. For example, an assignor may choose to assign away only part of their claim. See Restatement, § 326, p 41 ("[A]n assignment of a part of a right, whether the part is specified as a fraction, as an amount, or otherwise, is operative as to that part to the same extent and in the same manner as if the part had been a separate right."); *Schwartz v Tuchman*, 232 Mich 345, 349-350; 205 NW 140 (1925); *Henry Ford*

*Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 408; 927 NW2d 717 (2018). Indeed, such partial assignments are ubiquitous in no-fault cases because "the act contemplates and requires a multitude of performances (i.e., payments) by the insurer," which are often assigned to the providers who performed the relevant services. *Henry Ford Health Sys*, 326 Mich App at 408.

Additionally, it has long been the law in Michigan that a claim may be assigned for the purposes of collection, allowing the assignee to litigate the claim and reserving to the assignor the right to proceeds recovered. See, e.g., *Kearns v Mich Iron & Coke Co*, 340 Mich 577, 579-580, 581-583; 66 NW2d 230 (1954) (allowing the assignee to proceed with a claim in his own name, despite the fact that he had executed a declaration of trust promising to remit the proceeds from the lawsuit to the assignor); *Sharrar v Wayne Savings Ass'n*, 254 Mich 456, 458-459; 236 NW 833 (1931) (allowing the plaintiff to bring claims assigned to her by fellow membership subscribers, despite an agreement to distribute recovery pro rata). See also *Sprint Communications Co, LP v APCC Servs, Inc*, 554 US 269, 280-281; 128 S Ct 2531; 171 L Ed 2d 424 (2008) (canvassing the history of collection litigation and concluding that "during the 19th century, most state courts entertained suits . . . by individuals who were assignees for collection only"). We have explained that "where an assignment is such that satisfaction of the judgment obtained by the assignee will discharge the defendant from his obligation to the assignor, for the purpose of the suit the assignee is the real party in interest and may maintain an action in his own name." *Sharrar*, 254 Mich at 459.

## B. STANDING AND THE REAL PARTY IN INTEREST RULE

Both this Court and the Court of Appeals have referred to the real party in interest rule as a " 'standing doctrine.' " *Miller v Chapman Contracting*, 477 Mich 102, 106; 730 NW2d 462 (2007), quoting *Kalamazoo v Richland Twp*, 221 Mich App 531, 534; 562 NW2d 237 (1997). This description is imprecise.[13] While the two doctrines function similarly in practice, they are derived from different sources and serve different purposes. As a result, it is incorrect to assume that all features of our standing doctrine necessarily carry over to the real party in interest context—or vice versa. Similarly, the fact that a plaintiff is not the real party in interest does not necessarily mean that the suit will fail for lack of standing.

### 1. STANDING

"Standing 'generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury.' " *Pueblo v Haas*, 511 Mich 345, 355; 999 NW2d 433 (2023), quoting *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 583; 983 NW2d 798 (2022). Under Michigan law, standing is a "limited, prudential" doctrine, intended "to assess whether a litigant's interest in the issue is sufficient to 'ensure sincere and vigorous advocacy.' " *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich

---

[13] *Miller* held that the plaintiff could not amend a complaint to add the proper real party in interest, the bankruptcy trustee, because "the relation-back doctrine does not apply to the addition of new parties." *Miller*, 477 Mich at 106 (quotation marks, citations, and brackets omitted). Though the Court also made various statements about the real party in interest rule, such as describing it as a "standing doctrine," see *id*. at 106-107, these comments were neither "necessarily involved nor essential to determination of the case in hand" and thus were dicta, *Wold Architects & Engineers v Strat*, 474 Mich 223, 232 n 3; 713 NW2d 750 (2006) (quotation marks and citations omitted).

17

349, 355; 792 NW2d 686 (2010) (*LSEA*). Michigan's standing doctrine "grew out of cases where parties were seeking writs of mandamus to compel a public officer to perform a statutory duty." *Id*. at 355. Historically, it has played its greatest role in cases involving public rights, see *id*. at 355-359, but we have also invoked standing in cases involving "private rights," *id*. at 359, citing *Bowie v Arder*, 441 Mich 23, 42; 490 NW2d 568 (1992). See also *Allstate Ins Co v Hayes*, 442 Mich 56, 68-69; 499 NW2d 743 (1993) (discussing standing in the context of a declaratory-judgment action).

This Court articulated Michigan's modern, prudential standing doctrine in *LSEA*. As we explained,

> a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*LSEA*, 487 Mich at 372.]

We also noted that standing is a distinct question from the merits of the case and that it is not necessary to address the merits to determine whether a plaintiff has standing. See *id*. at 357-359.

## 2. REAL PARTY IN INTEREST

Unlike standing, our real party in interest jurisprudence is derived from statutes and court rules. MCL 600.2041, a portion of the Revised Judicature Act,[14] provides:

----

[14] MCL 600.101 *et seq*.

Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action was brought[.]

In keeping with this provision, MCR 2.201(B)(1) states:

Real Party in Interest. An action must be prosecuted in the name of the real party in interest, subject to the following provisions:

(1) A personal representative, guardian, conservator, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a person authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought.

Many jurisdictions, including Michigan, adopted statutes and rules like these in the nineteenth century to supersede the old common-law requirement that an assignee must bring suit in the name of the assignor. See *Aetna Life Ins Co v Moses*, 287 US 530, 540; 53 S Ct 231; 77 L Ed 477 (1933) ("[B]y the common law the assignee must, in general, sue in the name of the assignor."); *Blackwood v Brown*, 32 Mich 104, 107 (1875) ("Previous to the passage of our statute authorizing the assignee of certain choses in action not negotiable to sue and recover the same in his own name, the assignee would have had to sue in the name of the nominal, for the use of the real owner.").[15] This rule stemmed from a—now long disregarded—hostility toward assignments, which resulted in the

---

[15] The real party in interest rule was one of the many reforms included in New York's 1848 Field Code. See 6A Wright & Miller, Federal Practice and Procedure (3d ed), § 1541; Funk, *Equity without Chancery: The Fusion of Law and Equity in the Field Code of Civil Procedure, New York 1846-76*, 36 J Legal Hist 152, 173 (2015); NY Laws 1848, ch 379, § 91 ("Every action must be prosecuted in the name of the real party in interest, except as otherwise provided . . . ."). This provision of the Code was one of the antecedents to the modern Federal Rule of Civil Procedure 17(a). See FR Civ P 17(a) (1937, advisory committee notes); Wright & Miller, § 1541.

19

understanding that assignees did not hold legal title to the assigned claims. See *Sprint Communications*, 554 US at 276-279 (describing the historical development of the law of assignments).

Michigan statutes were initially permissive as to plaintiffs suing in the name of the real party in interest, but the Judicature Act, enacted in 1915, made this mandatory. See 1915 PA 314, Ch XII, § 2 (codified at 1915 CL 12353); *Mich Employers Cas Co v Doucette*, 218 Mich 363, 366; 188 NW 507 (1922) ("[W]hat was formerly permissive is now mandatory. All suits must be prosecuted in the name of the real party in interest."). The material portions of the 1915 statute are identical with the current requirements of MCL 600.2041.

We explained the reason for the requirement this way in *Kearns*:

> "Statutes requiring every action to be prosecuted in the name of the real party in interest are enacted to protect defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action, but so long as the defendant's rights are fully protected in the litigation, he cannot complain. He is entitled to be protected against vexatious litigation by different parties claiming to assert the same cause of action, but so long as the final judgment, when and if obtained, is a full, final, and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party, the defendant is not harmed." [*Kearns*, 340 Mich at 581, quoting *Poy v Allan*, 247 Mich 385, 388; 225 NW 532 (1929).]

Our reasoning parallels the explanations provided for the federal real party in interest rule. See, e.g., FR Civ P 17 (1966 amendment, advisory committee notes) ("[T]he modern function of the [real party in interest rule] in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata."); Wright & Miller,

20

§ 1541, p 463 n 9 (collecting cases). Accordingly, a party may sue as the real party in interest "if he can legally discharge the debtor and the satisfaction of judgment rendered will operate as such discharge, notwithstanding that the amount recovered may be for the benefit of another." *Johnson v Nat'l Fire Ins Co*, 254 Mich 126, 130; 235 NW 864 (1931), citing *Barak v Detroit Apartments Corp*, 232 Mich 59, 61; 204 NW 745 (1925).

Defendants argue that, like standing, real party in interest status must be established at the time a complaint is filed and cannot be remedied thereafter. See *League of Women Voters of Mich*, 506 Mich at 595 n 54 ("[S]tanding is determined at the time the complaint is filed."). We agree with defendants to the extent that they argue that real party in interest status is initially assessed at the time a complaint is filed. But we do not agree that a real party in interest defect cannot be remedied after filing. There is ample Michigan authority to the contrary.

In *DeLong v Marston*, 308 Mich 63, 68-69; 13 NW2d 209 (1944), we recognized that parties could later be joined or substituted if the real party in interest was not named in the original complaint. See *id*. ("If this suit was brought in the name of a party who is only nominally interested rather than being the real party in interest, it was in the power of the trial court to add or substitute as a party or parties plaintiff the actual parties, rather than to dismiss the bill."). Other decisions observe that a party could avoid dismissal by filing an amended complaint naming the real party in interest. See *Waters ex rel Commercial Cas Ins Co v Schultz*, 233 Mich 143, 145; 206 NW 548 (1925); *People ex rel Herbert v McKinley*, 220 Mich 112, 114; 189 NW 872 (1922). See also *Cannon Twp*, 311 Mich App at 412 (noting that when the plaintiff was not the real party in interest as to certain claims when suit was filed, but had later been assigned those claims, the trial court had properly

21

granted the plaintiff leave to amend its complaint to reflect that it was litigating as an assignee). These cases illustrate that a party may cure a real party in interest defect.[16]

To be clear, failure to bring suit in the name of the real party in interest is a ground for dismissal. See *Woodley*, 307 Mich at 478; *Heck*, 238 Mich at 202. However, it does not follow—as defendants suggest—that a suit originally filed in the name of someone other than the real party in interest must *necessarily* be dismissed. It is possible, in some circumstances, for a plaintiff to cure this defect.[17]

_____

[16] In dissent, Justice ZAHRA downplays the weight of these cases; however, he admits that "[s]ome cases suggest defects concerning the real party in interest may be cured[.]" *Post* at 7. He contends that we ought to rely on "[t]he most recent authority from this Court," *Miller*, 477 Mich 102. *Post* at 7. While we accept that our caselaw could be clearer, the cases we cite—which have not been overruled—are, in our view, more persuasive than *Miller*.

In that case, the Court—adopting an unpublished Court of Appeals decision as its own—concluded that an amended complaint substituting a bankruptcy trustee for the named plaintiff in order to remedy a real party in interest defect did not *relate back* to the original complaint because the relation-back doctrine does not extend to new parties. *Miller*, 477 Mich at 104, 106-107. As a result, the motion to amend was futile because the bankruptcy trustee's claim would have been barred by the statute of limitations. *Id*. at 107-108. The Court did not consider whether the real party in interest defect could have been cured prior to the expiration of the statute of limitations. And nothing in *Miller*'s reasoning suggests that this would not be possible. Although *Miller* said—in dicta—that a lawsuit "should" be initiated by the real party in interest, *id*. at 106, the authority we cite suggests that remedying real party in interest defects has long been permitted under Michigan law. Principles of both justice and fairness favor this outcome; litigants can have their cases resolved on the merits rather than have the courthouse door slammed shut because of an easily fixable technical defect. Moreover, requiring plaintiffs to file wholly new lawsuits after correcting a real party in interest issue does not serve the purpose of judicial efficiency.

[17] Justice ZAHRA expresses concern that our decision will allow "the prosecution of actions by persons who have no right, title, or interest in the cause[.]" *Post* at 9. We do not share his concern, primarily because a party with "no right, title, or interest in the cause" will be unable to prevail on the merits and, therefore, will have little incentive to commence or

22

However, they must take the proper steps to do so. A plaintiff may not fix real party in interest defects by unilateral actions taken outside of court, as the plaintiffs here attempted.[18] Instead, plaintiffs must take some action in the litigation that would allow the court to assess the effect of the change in parties. One possible process would be to file an amended complaint joining or substituting the proper plaintiff. See *DeLong*, 308 Mich at 68-69; MCR 2.202; MCR 2.205 through MCR 2.207.[19] Intervention by the real party in interest may accomplish the same purpose. MCR 2.209. Cf. *Mota-Peguero v Falls Lake Nat'l Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (March 28, 2024) (Docket No. 364103); slip op at 2 (noting that medical providers intervened in a patient's lawsuit to litigate their entitlement to PIP benefits). A plaintiff can also file an amended complaint reflecting the fact that they have become the real party in interest through an assignment. See *Cannon Twp*, 311 Mich App at 412; MCR 2.118; MCR 2.116(I)(5).[20] In all of these instances, the court will be able to consider whether the correction of the real party in

___

continue litigation. Rather, we expect our decision to affect cases like the ones before us—where there is legal or factual uncertainty about who is a real party in interest or where multiple parties have interests in different aspects of a case. The rule we recognize allows for defects of this nature to be corrected after the complaint is filed, much as pleading defects may be corrected.

[18] Neither C-Spine nor Wallace previously moved to amend their complaints or to take other actions within this litigation to remedy the real party in interest defects. They may attempt to do so as necessary on remand.

[19] MCR 2.205(A), which governs necessary joinder of parties, provides in relevant part, "[P]ersons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties and aligned as plaintiffs or defendants in accordance with their respective interests."

[20] We do not claim to provide a comprehensive list of the procedures a plaintiff could take to satisfy this requirement.

23

interest defect may relate back to when the original complaint was filed, or whether the suit will be barred by the running of the statute of limitations or the one-year-back rule—as well as any other obstacles that might arise. And, as will be discussed in more detail later in this opinion, the equitable remedy of rescission also addresses this issue. If a prior assignment is rescinded, the assignor plaintiff may effectively become the real party in interest at the time the suit was filed.

## C. AMENDMENT OF COMPLAINTS AND THE RELATION-BACK DOCTRINE

The Michigan Court Rules are generous with respect to the filing of amended complaints, see MCR 2.118(A)(2) ("Leave [to amend] shall be freely given when justice so requires."); MCR 2.116(I)(5), and the joinder or substitution of parties, see MCR 2.207 ("Parties may be added or dropped by order of the court on motion of a party or on the court's own initiative at any stage of the action and on terms that are just."); MCR 2.202(D). However, the court rules also empower a trial court to deny such relief if it would be unjust. See *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997) (noting that leave to amend under MCR 2.118 may be denied because of (1) "undue delay," (2) "bad faith or dilatory motive on the part of the movant," (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) "undue prejudice to the opposing party by virtue of allowance of the amendment," and (5) "futility") (quotation marks and citations omitted); MCR 2.207. See also MCR 2.118(A)(3) (allowing a trial court to require reimbursement of additional expenses, including reasonable attorney fees, from a party whose "inexcusable delay" in requesting leave to amend caused an adverse party to incur these expenses). These provisions provide trial courts ample authority and discretion

24

to punish misconduct, gamesmanship, or delay by plaintiffs, while still allowing the amendment of pleadings under the appropriate circumstances.

Relevant here, MCR 2.118(D) addresses the relation back of amendments:

> An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading.

Under this rule, an amendment that "introduces new facts, a new theory, or even a different cause of action" will still relate back, "so long as it springs from the same transactional setting as that pleaded originally." *LaBar v Cooper*, 376 Mich 401, 406; 137 NW2d 136 (1965) (quotation marks, citation, and emphasis omitted). Though we have applied this rule broadly to allow cases to be "decided on their merits, not on technicalities," *id*. at 407, we have also recognized some limitations. In *Miller*, 477 Mich at 106, we held that "[t]he relation-back doctrine does not apply to the addition of new parties." (Quotation marks, citation, and brackets omitted.) Even so, our opinion in that case acknowledged the misnomer doctrine, which allows for the correction of "inconsequential deficiencies or technicalities in the naming of parties[.]" *Id*. at 106-107; see also *Wells v Detroit News, Inc*, 360 Mich 634, 641; 104 NW2d 767 (1960) (allowing relation back when "the right party was served by the wrong name . . . [and] no one was misled thereby to his detriment").

The Court of Appeals has concluded that an assignment of PIP benefits in the middle of litigation cannot relate back to the original complaint date. In *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 202-205; 920 NW2d 148 (2018), the Court held in a split decision that the plaintiffs' motion to file an amended complaint under

MCR 2.118(D), in which they sought to add assignments from the patient to the plaintiff medical providers, amounted to a motion to supplement the pleadings under MCR 2.118(E). This barred the plaintiffs from recovery because a supplemental pleading does not relate back to the original complaint date and the plaintiffs' claims were filed past the one-year-back date.[21] *Id*. at 204-205. Cf. *Farrar*, 345 Mich App at 478 (applying similar reasoning to bar an assignee-provider from intervening in the assignor-patient's suit).

## IV. APPLICATION

As discussed in more detail later in this opinion, we hold that both plaintiffs had standing to file their lawsuits under MCL 500.3112, but they were not real parties in interest at the time the lawsuits were filed because they had fully assigned their respective rights to PIP benefits to third parties. Both C-Spine and Wallace had their real party in interest

---

[21] Judge SHAPIRO dissented from that portion of the opinion. His view was that "the addition of an allegation to establish standing when the issue is raised" did not " 'commence[]' a new 'action.' " *Jawad A Shah*, 324 Mich App at 219 (SHAPIRO, J., concurring in part and dissenting in part). He noted that the plaintiffs did not "seek to add any claim," that "every claim at issue . . . was defined and set forth in the initial complaint," and that the "[p]laintiffs [sought] exactly what they sought at the outset of the case, payment of past-due benefits." *Id*. at 220-221. We express no view on whether *Jawad A Shah* correctly decided the issues involving the relation-back doctrine and the one-year-back rule. This aspect of the Court of Appeals' decision in *Jawad A Shah* was not raised by the defendant in its application for leave to appeal, which we ultimately denied. *Jawad A Shah MD, PC v State Farm Mut Auto Ins Co*, 503 Mich 882 (2018) (order granting oral argument on the application and stating issues to be addressed by the parties); [*Jawad A Shah MD, PC*] *v State Farm Mut Auto Ins Co*, 504 Mich 987, 987 (2019) (order denying the application for leave to appeal after oral argument for failure to persuade the Court that "the questions presented should be reviewed by [the] Court"). Nor have we been asked to overrule *Jawad A Shah* here. But we note that *Jawad A Shah* was decided before the 2019 no-fault amendments added MCL 500.3145(3), which tolls the one-year-back period until the date an insurer formally denies the claim.

26

status restored after commencing litigation. However, they have not yet taken proper steps in the trial court to fully cure their real party in interest defects.

C-Spine fully assigned away its rights and did not retain a right to litigate the claims at issue, though it did not lose its standing. Its counter-assignments were effective in returning its real party in interest status—though it did not take action in the trial court, such as amending its complaints to reflect the counter-assignments, that would have allowed the trial court to consider the effect of this change. We remand C-Spine's case for further proceedings given that the lower courts have thus far only addressed the real party in interest issue through the erroneous lens of standing.

As to Wallace, she also retained standing to file a lawsuit, but she lost her real party in interest status when she assigned her claims to her medical providers. If Wallace's mid-litigation agreements with the providers are construed as revocations—as the Court of Appeals concluded—the revocations would restore her real party in interest status. We express no opinion on whether the one-year-back rule bars Wallace's claims in light of the rescissions she claims to have obtained from her medical providers. We remand to the trial court to consider whether Wallace is entitled to equitable rescission in the first instance.

## A. BOTH CASES: STANDING AND REAL PARTY IN INTEREST

Defendants argue that the plaintiffs lacked standing when they filed these cases. We disagree. There is no doubt that the plaintiffs here—a no-fault policyholder (Wallace) and a medical provider that treated policyholders (C-Spine)—have a legal cause of action against the defendant insurers to collect PIP benefits. Policyholders have always had the ability to file a lawsuit against their insurers to claim benefits under the no-fault act, and

27

the 2019 amendments to the no-fault act added a direct cause of action allowing medical providers to do the same. See MCL 500.3112. Accordingly, under *LSEA*, the plaintiffs had standing when they filed suit. *LSEA*, 487 Mich at 372 ("[A] litigant has standing whenever there is a legal cause of action.").

But a plaintiff must also be the real party in interest to proceed with its litigation. The Court of Appeals majority put the point well when it stated in *C-Spine*: "Whether [a plaintiff] has an *actionable claim for relief* is a different question than whether it has a *right to litigate* its current grievance in our courts." *C-Spine*, 344 Mich App at 633 (emphasis added). As already noted, generally, a plaintiff who assigns away a claim can no longer bring suit as the real party in interest. See *Woodley*, 307 Mich at 478. This is because an assignment is a transfer of the assignor's "whole interest" in its subject matter. See *Allardyce*, 291 Mich at 645 (quotation marks and citation omitted). Thus, if C-Spine and Wallace assigned, without reservation, their rights to the PIP benefits to third parties, they would no longer be the real parties in interest and their claims would be subject to dismissal. But if plaintiffs can show that they retained the right to litigate the claims or that they cured their real party in interest defect, their lawsuits could survive.[22]

---

[22] The discussion here concerns the general ability of no-fault policyholders and medical providers to bring claims against an insurer *after* executing an assignment of PIP benefits. Under the current no-fault act, before any assignments are executed, both the policyholder and the medical provider hold independent statutory causes of action. See MCL 500.3112. Therefore, such assignments are no longer strictly necessary. Plaintiffs claim that medical providers still routinely require assignments from patients because of this Court's decision in *Mecosta Co Med Ctr*, 509 Mich at 279-280, 290, which held that providers and patients are no longer in privity for purposes of res judicata after an assignment. According to plaintiffs, providers are motivated to obtain assignments by a desire to avoid being bound by their patients' litigation losses or mistakes.

## B. C-SPINE

C-Spine assigned its right to collect Jose and Sandra's PIP benefits to several factoring companies prior to filing this lawsuit. As previously discussed, we reject its first argument that it remained a real party in interest simply by virtue of the direct cause of action provided to medical providers against PIP insurers in MCL 500.3112. But C-Spine could remain a real party in interest if the assignments to the factoring companies left C-Spine with the right to pursue the claims at issue through litigation, or if the counter-assignments returned C-Spine's real party in interest status.

The Court of Appeals held that MCR 2.201(B)(1) ("[A] person authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought.") allowed C-Spine to sue because it was "vested with the right of action" as a result of the assignments from Jose and Sandra, despite the fact that the "beneficial interest" resided with the factoring companies. *C-Spine*, 344 Mich App at 633 (quotation marks and citation omitted). In a similar vein, C-Spine argues now that it only assigned its "accounts

---

That may be the case. But it bears noting that *Mecosta Co Med Ctr* is one of several recent decisions by both this Court and the Court of Appeals that noted that an insurer's rescission of an insurance policy—which results in a denial of benefits to an insured or covered party—does not necessarily extend to third parties, such as medical providers. Rather, because rescission is an equitable remedy, the equities must be balanced. See, e.g., *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018) ("Because a claim to rescind a transaction is equitable in nature, it 'is not strictly a matter of right' but is granted only in 'the sound discretion of the court.' ") (citation omitted); *Wilmore-Moody*, 511 Mich at 84-88. See also *Mota-Peguero*, ___ Mich App at ___; slip op at 1-2, 4-6; *Van Dyke Spinal Rehab Ctr, PLLC v USA Underwriters*, ___ Mich App ___, ___; ___ NW3d ___ (May 30, 2024) (Docket No. 365848); slip op at 4-5 (both concluding that, after the insurer rescinded the patient's insurance policy because of fraud, rescission did not automatically bar the medical provider's direct action under MCL 500.3112).

29

receivable" to the factoring companies and that it retained ownership of the "cause of action" even though the "beneficial interest" lay with the factoring companies.

Here, it is important to note the distinction between what C-Spine *could have done* and what it *actually did*. As we explained in *Kearns*, 340 Mich at 581-584, it is perfectly acceptable to assign a claim for the purposes of collection if a judgment obtained by the assignee will discharge the defendant from their obligation to the assignor. The situation here is the inverse of *Kearns*. C-Spine, the assignor, assigned the proceeds of its claims to the factoring companies, while claiming that it retained the power to litigate and collect on the claims. The reasoning of *Kearns* applies with equal force here, given that the purpose of the real party in interest rule is to ensure that a defendant is not subject to multiple lawsuits after a judgment. If C-Spine assigned the proceeds of the claims at issue to the factoring companies, but kept the power to litigate them, it could still be a real party in interest so long as C-Spine could fully discharge Progressive's obligation to pay the benefits in question.

But while C-Spine *could* have made such an arrangement with the factoring companies, it did not *do so*. We agree with the trial court that "[a] plain and ordinary reading of the terms in the [sample agreement] leads to one inescapable conclusion—[C-Spine] sold or assigned its rights in the accounts to the factoring companies," as well as its observation that the agreement "[did] not describe any interest [C-Spine] retained in the accounts . . . ." No provision in the agreement preserved C-Spine's right to litigate the assigned claims, and several provisions contemplate that the factoring companies would do so.

30

C-Spine now argues that it was always understood that it would retain the ability to litigate these claims. It relies on extrinsic evidence—affidavits from its chief executive officer and executives from the factoring companies, all executed after the counter-assignments were signed—in which each individual asserts that "C-Spine owns the right to sue for [the benefits in question]." To accept this argument, this Court would have to ignore the sample agreement's express language, including its integration provisions.[23] The written agreement is clear, and thus these arguments are of no moment. See *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010) ("[I]f the language of a contract is unambiguous, it is to be construed according to its plain meaning."); *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008) (noting that extrinsic evidence may only be considered when contractual language is ambiguous). Accordingly, because C-Spine fully assigned its rights to litigate Jose's and Sandra's claims for PIP benefits before commencement of litigation, it was not the real party in interest when it filed its complaints. And contrary to the Court of Appeals' analysis, C-Spine therefore no longer retained the right to litigate and collect on these claims.

---

[23] The sample agreement provides:

> 36. **Prior Understandings.** This Agreement supersedes any and all prior discussions and agreements between Seller and Buyer with respect to the purchase of the Accounts and other matters contained herein and this Agreement contains the sole and entire understanding between the Parties hereto with respect to the transactions contemplated herein.
>
> * * *
>
> 39. **Integrated Agreement.** With the exception of the [nondisclosure agreement], this Agreement and all Exhibits, addenda, and/or schedules hereto constitute the final complete expression of the intent and understanding of the Buyer and the Seller.

C-Spine next argues that—whatever was true of the original assignments—the counter-assignments from the factoring companies back to C-Spine and "amendments of agreements" allowed C-Spine to sue as the real party in interest. We agree that these documents made C-Spine the real party in interest again, by either transferring claims to it or by clarifying that it always had the power to collect on these claims on behalf of the factoring companies. The Court of Appeals concluded as much, stating that the documents eliminated the possibility that Progressive "could face a second lawsuit brought by the factoring companies." *C-Spine*, 344 Mich App at 634. Progressive does not appear to dispute this conclusion, instead arguing in this Court that the factoring companies were not proper parties after the counter-assignments were executed. In sum, while we disagree with the Court of Appeals that C-Spine was a real party in interest when the assignments to the factoring companies were in effect, we hold that C-Spine was restored as a real party in interest via the counter-assignments.

However, that does not end the analysis. As noted earlier, a party may not cure a real party in interest defect through out-of-court action alone. C-Spine needed to file amended complaints reflecting the counter-assignments or take some other action that would have allowed the trial court to consider their effect.

For all the foregoing reasons, we affirm the judgment of the Court of Appeals and its disposition, and we remand to the trial court for further proceedings consistent with this opinion. On remand, the parties may raise matters not previously addressed by the lower courts. These include whether C-Spine can now file amended complaints pursuant to MCR 2.118 and the implications of MCL 500.3145 on the case. Our decision is also without

32

prejudice to defendants seeking summary disposition under a different legal theory, if doing so would be appropriate.

## C. WALLACE

Wallace also claims that she remained the real party in interest, despite having assigned her claims for PIP benefits to her medical providers. As with *C-Spine*, this argument fails unless Wallace retained the right to litigate her claims or regained real party in interest status via the revoked or rescinded assignments.

Unlike C-Spine, Wallace argues that she and her medical providers mutually rescinded the assignments, which rendered them void *ab initio* and retroactively made her the real party in interest at the time of filing. We disagree. As we have explained, rescission of a contract subject to litigation "does not function by automatic operation of the law."[24] *Bazzi v Sentinel Ins Co*, 502 Mich 390, 411; 919 NW2d 20 (2018). Rather, it is an equitable remedy that the trial court may grant, in its discretion, after balancing the equities. See *id*. at 409.[25]

---

[24] Most of this Court's recent decisions regarding rescission in the no-fault context involve the rescission of no-fault automobile insurance policies. See, e.g., *Bazzi*, 502 Mich at 396; *Wilmore-Moody*, 511 Mich at 79; *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 503; 968 NW2d 482 (2021). However, these represent only one potential application of the broadly available remedy of rescission. See, e.g., *Lenawee Co Bd of Health v Messerly*, 417 Mich 17; 331 NW2d 203 (1982) (considering whether a party to a land contract was entitled to rescission).

[25] In *Meemic Ins Co*, 506 Mich at 310-311 n 19, we acknowledged the existence of a legal—rather than equitable—rescission remedy, but we noted that it was procedurally distinct and required the plaintiff to " 'tender to the other party, as a precondition of suit, specific restitution of everything received under the contract.' " (Citation omitted.) As Wallace does not claim to have complied with these procedural requirements, we need not address whether legal rescission would be an available remedy under these circumstances or whether it would affect third parties like SMART.

33

These same equitable considerations apply to a court's decision to extend the effect of a rescission to a third party. See *id*. at 410-411; see also *Univ of Mich Regents v Mich Auto Ins Placement Facility*, 340 Mich App 196, 206; 986 NW2d 152 (2022) (noting that trial courts are required to balance the equities between a defrauded insurer and an innocent third party before extending the mutual rescission of a no-fault insurance policy to the third party).[26] While courts may extend a mutual rescission to third parties as an equitable

---

[26] Justice ZAHRA argues in dissent that a court cannot "impose the effect of a rescinded contract on a third party that is wholly uninvolved with the rescinded contract." *Post* at 12. See also *id*. at 12 n 45. We respectfully disagree. Applicability to third parties is what distinguishes rescission from other remedies, like reformation. See *Bazzi*, 502 Mich at 412 n 12 ("If the insurer could not rescind as to the third parties, but could rescind as to any claims by the fraudulent insured, then the policy would not be fully rescinded; rather it would be considered reformed."). Numerous Michigan cases concern insurers' attempts to rescind a policy on the basis of fraud or misconduct by the policyholder and discuss the effect the rescission may have on third parties. In *Titan Ins Co v Hyten*, 491 Mich 547, 572-573; 817 NW2d 562 (2012), we concluded that "an insurer may seek to avoid liability under an insurance policy using traditional legal and equitable remedies including cancellation, *rescission*, or reformation, on the ground of fraud made in an application for insurance, notwithstanding that the fraud may have been easily ascertainable and *the claimant is a third party*." (Emphasis added.) There, the policyholder (Hyten) injured a couple (the Holmeses) in a car accident, and Hyten's insurer (Titan) discovered that she had made misstatements in her application for insurance. *Id*. at 551-552. Titan then filed a declaratory-judgment action against Hyten, seeking to avoid liability to the Holmeses based on Hyten's fraud. Despite the fact that the Holmeses were "wholly uninvolved" with the fraud or the policy, we concluded that Titan could avail itself of "traditional legal and equitable remedies," including rescission, to avoid or limit its liability to them. *Id*. at 571-573.

We expanded this ruling in *Bazzi*, overruling Court of Appeals precedent that had held that the "right to rescind ceases to exist once there is a claim involving an innocent third party," *Bazzi*, 502 Mich at 401 (quotation marks and citation omitted), based on a determination that "there is nothing in the no-fault act that indicates that the reasonable expectations of an innocent third party surmount the reasonable expectations of the insurer," *id*. at 407. We then remanded the matter to the trial court to balance the equities and determine whether rescission was an appropriate remedy. *Id*. at 412. Applying these principles, many Court of Appeals decisions have considered whether a medical provider

34

remedy, Wallace and her medical providers cannot unilaterally declare a "rescission" and apply its effects retroactively to ongoing litigation with third parties.[27] Even if Wallace and her providers' actions were sufficient to effect a mutual rescission of the assignments, that rescission could not be given legal effect as to a third party without a ruling from a court.

Here, the trial court accepted Wallace's rescissions, allowing the case to proceed. But it never balanced the equities, which an equitable rescission would require. The Court of Appeals treated the "rescissions" as revocations and held that, even though Wallace had her claims restored to her, she could not prevail because of the one-year-back rule.[28]

---

may collect PIP benefits when the underlying insurance policy has been rescinded because of fraud. See, e.g., *Van Dyke Spinal Rehab Ctr*, ___ Mich App at ___; slip op at 1-2, 12; *Mota-Peguero*, ___ Mich App at ___; slip op at 5-6; *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 346 Mich App 197, 208-212; 12 NW3d 20 (2023); *Univ of Mich Regents*, 340 Mich App at 201-203; *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 410-411; 952 NW2d 586 (2020).

Justice ZAHRA points to the facts of *Bazzi* and *Wilmore-Moody* to argue that rescission cannot apply to third parties who were "wholly" or "completely" "uninvolved" with the policies or contracts at issue. *Post* at 13 n 45. Whatever the facts of these cases, the rule he argues for is not present in their reasoning.

[27] Obviously, the effects of such a mutual rescission on the *parties*' obligations to each other are another matter.

[28] *Wallace*, 347 Mich App at 389-391. We note that the Court of Appeals incorrectly considered whether the medical providers (the assignees who were the real parties in interest at the time the lawsuit was filed) had an actionable claim to assign in light of the one-year-back rule, not whether Wallace would have been able to litigate the claims herself. See *id*. While any claims from the medical providers would have been barred under the one-year-back rule, the fact that they are "liable to be defeated" does not prevent those claims from being assigned. *Kane v Clough*, 36 Mich 436, 440 (1877).

But a rescission is not the same as the revocation, repudiation, or cancellation of a contract.[29]  See *Wall v Zynda*, 283 Mich 260, 264; 278 NW 66 (1938) (" 'To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning[.] . . . Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it.  But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the status quo.' ") (citation omitted).  If the court recognizes a rescission, an equitable remedy, it is as if the contract at issue never existed.[30]  See *id*.; *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 515 n 37; 968 NW2d 482 (2021) ("[R]escission abrogates a contract completely.  All former contract rights are annulled, and it is as if no contract had been made.") (quotation marks and citations omitted; alteration in original).

Here, a rescission would make things as if the first assignments from Wallace to her providers never existed.  But, because rescission is an equitable remedy, a court would

---

[29] To be clear, we do not ascribe any special legal meaning to the term "revocation."  Our intention is merely to contrast the equitable remedy of rescission with the myriad of other ways in which the parties to a contract could repudiate, terminate, cancel, or otherwise end their contractual relationship.  Consistent with the parties, we use the term "revocation" in this decision to describe what the agreements *here* would be if they did not form the basis for an equitable rescission.

[30] Justice ZAHRA cites our decision in *Wilmore-Moody* for the proposition that a " 'rescission of an insurance policy . . . does not operate to alter the past by rendering the insured as having been without no-fault insurance at the time of the accident for purposes of the prohibition contained in MCL 500.3135(2)(c).' "  *Post* at 15 (ellipsis added by Justice ZAHRA), quoting *Wilmore-Moody*, 511 Mich at 88.  But that case concerned the application of a provision of the no-fault act that required a policyholder to have coverage "at the time the injury occurred."  MCL 500.3135(2)(c).  There is no comparable statutory language at issue here.

have to balance the equities before granting that relief. The distinction between rescission and revocation matters here. The Court of Appeals, treating the agreements as revocations, recognized that they returned Wallace's rights to sue, but concluded that they did so too late. *Wallace*, 347 Mich App at 389-391.[31] Had it recognized them as rescissions the result might have been different.

Given its understanding of the legal issues before it, the trial court did not need to engage in a rescission analysis. The issue must now be reconsidered. Because rescission is "a remedy, the granting of which rests in the sound discretion of the court," *Bazzi*, 502 Mich at 409 (quotation marks and citation omitted), the trial court ought to consider this issue in the first instance. We take no position on whether rescission would be available to Wallace on these facts or whether it would be equitable under the circumstances.

We therefore hold that Wallace had standing when she filed her lawsuit, she was not the real party in interest at that time, and her real party in interest status was restored when she obtained the "mutual rescissions." We vacate the conclusion of the Court of Appeals that Wallace's claims are barred by the one-year-back rule. And we remand the matter to the trial court to consider whether equitable rescission should apply to the case, see *Bazzi*, 502 Mich at 410, and whether the real party in interest defect that existed at filing can be cured.

---

[31] We note that Wallace's claims were all "formally denied" and that therefore, there is no question that the tolling period under MCL 500.3145(3) ended. While she argued that she never received a formal denial because the denials were sent to her providers and not directly to her, this argument fails because the claims had been assigned to the providers at that time.

37

## V. CONCLUSION

A plaintiff who has assigned away their claim is not the real party in interest. However, defects in real party in interest status are not necessarily fatal to a lawsuit. The plaintiff may fix such a problem by joining or substituting the proper party, amending their complaint, seeking and obtaining the equitable remedy of rescission, or taking other actions during litigation to cure a real party in interest defect. A plaintiff seeking PIP benefits who cures a real party in interest defect is still subject to the one-year-back rule.

In keeping with these conclusions, in *C-Spine*, we affirm the judgment of the Court of Appeals, though on alternate grounds. While C-Spine had standing throughout the litigation, the Court of Appeals erred by holding that C-Spine remained a real party in interest after it assigned its rights to the PIP benefits to the factoring companies. But we hold that C-Spine obtained real party in interest status upon receiving the counter-assignments. For this reason, the Court of Appeals reached the correct result. Whether C-Spine can still cure the real party in interest defect in this case in the trial court may be addressed on remand. We therefore remand the case to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.

In *Wallace*, we agree with the Court of Appeals' holding that Wallace was not the real party in interest after she assigned away her claims. But we reverse the Court of Appeals' decision to the extent that it held that Wallace did not have standing and that she could not attempt to reobtain her status as a real party in interest after obtaining the mutual rescissions. Further, we vacate the Court of Appeals' holding that, if Wallace revoked her assignments, then her claims are barred by MCL 500.3145(2), and we remand to the trial

38

court to balance the equities and determine whether equitable rescission is warranted under the facts of this case. We do not retain jurisdiction.

Elizabeth M. Welch
Megan K. Cavanagh
Richard H. Bernstein
Kyra H. Bolden

# STATE OF MICHIGAN

## SUPREME COURT

C-SPINE ORTHOPEDICS, PLLC,

      Plaintiff-Appellee,

v                                 Nos. 165537-8

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

      Defendant-Appellant.

_____

PARIE WALLACE,

      Plaintiff-Appellant,

and

AFFILIATED DIAGNOSTIC OF OAKLAND
and ONE STEP REHAB LLC,

      Intervening Plaintiffs,

v                                 No. 165964

SUBURBAN MOBILITY AUTHORITY
FOR REGIONAL TRANSPORTATION,

      Defendant-Appellee,

and

JANET SZCZOTKA,

      Defendant.

_____

WELCH, J. (*concurring*).

I concur fully in my majority opinion, but I write separately to note my continued belief that several of this Court's recent no-fault decisions are inconsistent with the reasoning of *Andary v USAA Cas Ins Co*, 512 Mich 207; 1 NW3d 186 (2023). See *Centria Home Rehab, LLC v Allstate Ins Co*, ___ Mich ___; 12 NW3d 387 (2024), and *Spine Specialists of Mich PC v MemberSelect Ins Co*, ___ Mich ___; ___ NW3d ___ (April 1, 2025) (Docket No. 165445).

As I discussed in my dissenting statement in *Centria*, I do not believe that medical providers providing services to patients who were injured before the 2019 no-fault amendments[1] can avail themselves of the new direct cause of action in MCL 500.3112.[2] Here, policyholders Jose Cruz-Muniz and Sandra Cruz obtained coverage from defendant Progressive Michigan Insurance Company and were injured *before* the 2019 amendments to the no-fault act went into effect. Therefore, in my view and as set forth in *Andary*, Jose's and Sandra's contractual rights to personal protection insurance (PIP) benefits vested under the pre-amendment version of the no-fault act, which was in effect at the time they were injured. See *Centria*, ___ Mich at ___; 12 NW3d at 387-390 (WELCH, J., dissenting); *Andary*, 512 Mich at 231-246. Any assignment of PIP-benefits claims received by plaintiff C-Spine Orthopedics, PLLC, from Jose and Sandra would have been consistent with their—and Progressive's—vested contractual rights. Because the former version of MCL

---

[1] See MCL 500.3101 *et seq*., as amended by 2019 PA 21 and 2019 PA 22, effective June 11, 2019.

[2] No such issue arises in *Wallace v Suburban Mobility Auth for Regional Transp* (Docket No. 165964), as all relevant events in that case occurred *after* the 2019 amendments to the no-fault act went into effect.

2

500.3112 was in effect when the accident occurred, my view is that the former version governs their claims to benefits in this litigation. See *Andary*, 512 Mich at 240-242.

However, my colleagues did not agree with my view in *Centria*, and the parties here do not dispute the applicability of the amended version of MCL 500.3112. Accordingly, in my majority opinion, I proceed from the assumption that the amended statute applies to the parties' claims. Furthermore, while I disagreed with my colleagues in *Centria* as to the application of MCL 500.3112 as to claims arising from pre-2019 injuries, I am in full agreement that the analysis in the majority opinion should apply fully to claims arising after the 2019 no-fault amendments came into effect.

Elizabeth M. Welch

# STATE OF MICHIGAN

## SUPREME COURT

C-SPINE ORTHOPEDICS, PLLC,

      Plaintiff-Appellee,

v

Nos. 165537-8

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

      Defendant-Appellant.

---

PARIE WALLACE,

      Plaintiff-Appellant,

and

AFFILIATED DIAGNOSTIC OF OAKLAND
and ONE STEP REHAB LLC,

      Intervening Plaintiffs,

v

No. 165964

SUBURBAN MOBILITY AUTHORITY
FOR REGIONAL TRANSPORTATION,

      Defendant-Appellee,

and

JANET SZCZOTKA,

      Defendant.

---

ZAHRA, J. (*dissenting*).

The majority opinion declares three holdings. I agree with two of these three holdings. Specifically, I agree that "both C-Spine and Wallace had standing to file their respective lawsuits; however, they were not real parties in interest at the time they filed suit because they had previously assigned away their claims for [personal protection insurance (PIP)] benefits[.]" I also agree that "the one-year-back rule, MCL 500.3145(2), does not affect whether a plaintiff is a real party in interest—though it may bar recovery." My disagreement with the majority opinion arises from the holding that "defects in real party in interest status may be cured after the filing of a lawsuit[.]" I would hold that litigation must be commenced by the real party in interest. I would further hold that all attempts to restore real party in interest status to a plaintiff who commences litigation without such status must fail. Parties to a contract may assign or counter-assign rights. And a contract may be revoked or rescinded. But such actions merely create new rights attached to the parties involved; they do not restore rights to make valid a lawsuit subject to dismissal for want of the real party in interest.[1] I would affirm the Court of Appeals in *Wallace*,[2] and I would reverse the Court of Appeals in *C-Spine Orthopedics*.[3]

---

[1] This is not to say that a party cannot counter-assign, rescind, or revoke an assignment. But when such actions occur, the real party in interest status commences from the date of such action and does not relate back to the date a suit was filed by a party who was not a real party in interest when the action was first filed.

[2] *Wallace v Suburban Mobility Auth for Regional Transp* (Docket No. 165964).

[3] *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co* (Docket Nos. 165537-8).

## I. DEFECTS IN REAL PARTY IN INTEREST STATUS MAY NOT BE CURED AFTER THE FILING OF A LAWSUIT

Contrary to the holding in the majority opinion, I conclude that defects in real party in interest status may not be cured after the filing of a lawsuit. Litigation must be commenced by the real party in interest, the party who will assure sincere and vigorous advocacy, and a failure to do so is grounds for dismissal. As the majority opinion notes, "Michigan courts have long recognized that a plaintiff who assigns a claim cannot then bring suit to collect on that claim as that plaintiff is no longer the real party in interest."[4] And as also noted in the majority opinion, "failure to bring suit in the name of the real party in interest is a ground for dismissal."[5] In fact, this Court has "sustained the dismissal of suits where it was shown that the plaintiff had assigned his claim against the defendant to an insurance company and was not the real party in interest."[6] As noted in the majority opinion, it is a basic proposition of law that every action *must* be prosecuted in the name of the real party in interest:

---

[4] Citing *Woodley v Lancaster*, 307 Mich 473, 478; 12 NW2d 428 (1943); *Heck v Henne*, 238 Mich 198, 202; 213 NW 112 (1927).

[5] Citing *Woodley*, 307 Mich at 478; *Heck*, 238 Mich at 202.

[6] *Woodley*, 307 Mich at 478, citing *Heck*, 238 Mich 198; *Heck*, 238 Mich at 201-202 ("The statute . . . requires every action to be prosecuted in the name of the real party in interest. Plaintiff's right of action for damage to the car was assigned to the insurance company, and from the date of such assignment the insurance company was the real party in interest in seeking a recovery. The circuit judge was in error in permitting the amendment. He should have dismissed the suit of the insurance company, so prosecuted in the name of plaintiff.").

3

Michigan statutes were initially permissive as to plaintiffs suing in the name of the real party in interest, but the Judicature Act, enacted in 1915, made this mandatory. See 1915 PA 314, Ch XII, § 2 (codified at 1915 CL 12353); *Mich Employers Cas Co v Doucette*, 218 Mich 363, 366; 188 NW 507 (1922) ("[W]hat was formerly permissive is now mandatory. All suits must be prosecuted in the name of the real party in interest."). The material portions of the 1915 statute are identical with the current requirements of MCL 600.2041.

There are compelling reasons to require suits that "are directed by statute to be brought by the real party in interest."[7] This Court has long held that "[s]tatutes requiring every action to be prosecuted in the name of the real party in interest are enacted to protect defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action[.]"[8] The real party in interest doctrine "recognizes that litigation should be [commenced] only by a party having an interest that will assure sincere and vigorous advocacy."[9]

Nonetheless, the majority opinion states that there is "ample Michigan authority" to suggest that the real party in interest does not have to be established at the time a complaint is filed and can be remedied thereafter.[10] By no means is there ample authority for this proposition. In *DeLong v Marston*,[11] a case from 1944, the defendants argued, among other

---

[7] *Poy v Allan*, 247 Mich 385, 388; 225 NW 532 (1929).

[8] *Kearns v Mich Iron & Coke Co*, 340 Mich 577, 581; 66 NW2d 230 (1954) (quotation marks omitted), quoting *Poy*, 247 Mich at 388. The majority opinion agrees with this proposition.

[9] *Miller v Chapman Contracting*, 477 Mich 102, 106; 730 NW2d 462 (2007) (quotation marks and citation omitted).

[10] Citing *DeLong v Marston*, 308 Mich 63, 68-69; 13 NW2d 209 (1944); *Waters ex rel Commercial Cas Ins Co v Schultz*, 233 Mich 143, 145; 206 NW 548 (1925); *People ex rel Herbert v McKinley*, 220 Mich 112, 114; 189 NW 872 (1922); *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 412; 875 NW2d 242 (2015).

[11] *DeLong*, 308 Mich 63.

things, that the plaintiff, Eleanor DeLong, was not the real party in interest.[12]  The Court did not accept the defendants' argument and instead merely observed that it was *possible* that someone other than DeLong was the real party in interest.  The Court deferred the question to the trial court, noting that "[i]f this suit was brought in the name of a party who is only nominally interested rather than being the real party in interest, it was in the power of the trial court to add or substitute as a party or parties plaintiff the actual parties, rather than to dismiss the bill."[13]  The *DeLong* opinion offered no guidance on how to determine the real party in interest, nor did it offer guidance on when or how a trial court should properly exercise its discretion in substituting parties.  At best, the passing observations of the *DeLong* Court are obiter dicta, the relevance of which is greatly diminished by more recent caselaw from this Court and the Court of Appeals that offers sound reasons why litigation should be commenced only by the real party in interest.[14]

The majority opinion also cites *Waters ex rel Commercial Cas Ins Co v Schultz*,[15] *People ex rel Herbert v McKinley*,[16] *and Cannon Twp*,[17] stating that these cases "observe

---

[12] *Id*. at 67.

[13] *Id*. at 68-69.

[14] *Miller*, 477 Mich at 106; see also *Farrar v Suburban Mobility Auth for Regional Transp*, 345 Mich App 472, 482; 7 NW3d 80 (2023) ("The real-party-in-interest doctrine 'recognizes that litigation should be begun only by a party having an interest that will assure sincere and vigorous advocacy' and 'protects a defendant from multiple lawsuits for the same cause of action.' "), quoting *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013).

[15] *Waters*, 233 Mich at 145.

[16] *McKinley*, 220 Mich at 114.

[17] *Cannon Twp*, 311 Mich App at 412.

5

that a party could avoid dismissal by filing an amended complaint naming the real party in interest." A closer look at these cases, however, provides little support for the proposition asserted in the majority opinion. In *McKinley*, this Court did not allow the plaintiff to amend his complaint to add the real party in interest. Instead, this Court stated that, had the plaintiff prevailed in the court below, this Court *may* have allowed the plaintiff to amend in order to save the judgment.[18] And in *Waters*, a case in which the plaintiff was not the real party in interest, the Court stated that the defendant's "motion to dismiss the case for want of the proper party *should* have been granted."[19] Significantly, both *Waters* and *McKinley* were decided before this Court held that the failure to bring suit in the name of the real party in interest is grounds for dismissal[20] and before this Court held that litigation should be commenced by the real party in interest.[21]

The majority opinion's reliance on *Cannon Twp*, a Court of Appeals case not binding on this Court, is also misplaced.[22] *Cannon Twp* is materially distinguishable from the case before us because *Cannon Twp* did not revive a suit by a nonparty. In *Cannon Twp*, the plaintiff was the real party in interest as to certain, but not all, claims brought against the defendant when it brought suit. And because the other interested parties had

---

[18] *McKinley*, 220 Mich at 114.

[19] *Waters*, 233 Mich at 145 (emphasis added).

[20] *Woodley*, 307 Mich at 478.

[21] *Miller*, 477 Mich at 106.

[22] I take no stand on whether *Cannon Twp* was correctly decided. I do note, however, that it is not necessary for this Court to distinguish *Cannon Twp* when it is a Court of Appeals decision addressing certain statutory provisions that this Court has not interpreted before today.

6

assigned their claims to the plaintiff, the Court of Appeals allowed the plaintiff to amend its complaint to reflect that it was the real party in interest as to all claims against the defendant.[23] The amendment merely added claims against a litigant where the plaintiff was already indisputably a proper real party in interest. Here, however, plaintiffs did not have any viable claims against defendants when they commenced litigation. Overall, the authority cited by the majority opinion provides minimal support for its holding.

Admittedly, our caselaw is somewhat convoluted. Some cases suggest defects concerning the real party in interest may be cured, while others conclude they may not. Those cases that permit amendment to add a real party in interest not previously named offer little or no reasoning why this should be permitted, nor do they expound upon how the expiration of limitations periods may affect such substitutions. The most recent authority from this Court, however, holds that litigation should be commenced only by the real party in interest and offers powerful and persuasive reasoning to support this holding.[24] In *Miller v Chapman Contracting*, the plaintiff brought suit against the defendants in a personal injury action.[25] After the limitations period had expired, the defendants sought summary disposition, claiming that the plaintiff was not the real party in interest.[26] The plaintiff bankruptcy debtor then moved to amend the complaint to substitute the

---

[23] *Cannon Twp*, 311 Mich App at 412.

[24] *Miller*, 477 Mich at 106.

[25] *Id*. at 104.

[26] *Id*.

7

bankruptcy's trustee as the plaintiff.[27]  There was no dispute that the real party in interest was the bankruptcy trustee, not the plaintiff.[28]  Thus, the issue was whether the plaintiff should be granted leave to amend to add the bankruptcy trustee.[29]  This Court held that the motion to amend sought to add a new party, and thus, the amendment could not relate back to the original pleading because the relation-back doctrine does not extend to the addition of new parties.[30]  In so holding, the Court explained that the real party in interest doctrine "recognizes that litigation should be [commenced] only by a party having an interest that will assure sincere and vigorous advocacy."[31]  Such advocacy can result only when the party vested with the right of action on a given claim initiates and prosecutes the suit.[32] Thus, the plaintiff was not allowed to amend his complaint to add the bankruptcy trustee as the real party in interest.[33]  In recent years, different Court of Appeals panels have cited *Miller* for the proposition that litigation should be initiated by the real party in interest.[34]

---

[27] *Id*. at 105.

[28] *Id*.

[29] *Id*.

[30] *Id*.

[31] *Id*. at 106 (quotation marks and citation omitted).

[32] See *id*.

[33] *Id*. at 107-108.

[34] *Farrar*, 345 Mich App at 482 ("The real-party-in-interest doctrine 'recognizes that litigation should be begun only by a party having an interest that will assure sincere and vigorous advocacy' and 'protects a defendant from multiple lawsuits for the same cause of action.' "), quoting *Barclae*, 300 Mich App at 483; *Wallace v Suburban Mobility Auth for Regional Transp*, 347 Mich App 380, 386-387; 15 NW3d 306 (2023); *Olin v Mercy Health Hackley Campus*, 328 Mich App 337, 345; 937 NW2d 705 (2019).

In contrast to the older cases cited in support of the majority opinion, which do not offer guidance on when it may be appropriate to add a real party in interest not previously party to a suit, *Miller* squarely addressed the issue and adopted the proposition that litigation should be dismissed if it was not initiated by a real party in interest. *Miller* is the most recent and most persuasive authority addressing this topic and should be followed in this case. I would hold that litigation must be brought by the real party in interest. No persuasive reasoning to the contrary has been presented to this Court. Common sense, reason, and logic dictate that an action should be litigated by the real party in interest. What logic exists to permit the prosecution of actions by persons who have no right, title, or interest in the cause?[35] One must rightly question the motive of a plaintiff who brings suit not as the real party in interest.[36] In *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, for example, C-Spine brought suit against Progressive Michigan Insurance Company after C-Spine had fully assigned its rights away to third-party factoring companies. What purpose would C-Spine have to bring suit when it had no viable claim against

---

[35] 59 Am Jur 2d, Parties, § 38, citing *Millard Gutter Co v Shelter Mut Ins Co*, 312 Neb 606; 980 NW2d 420 (2022), and *North Star Mut Ins Co v Stewart*, 311 Neb 33; 970 NW2d 461 (2022).

[36] The majority opinion contends that parties who have " 'no right, title, or interest in the cause' will be unable to prevail on the merits and, therefore, will have little incentive to commence or continue litigation." These cases prove this to be false. C-Spine and Wallace both commenced their respective litigations although they had "no right, title or interest" when they filed suit. Moreover, there is no "legal or factual uncertainty about who [was the] real party in interest" in these cases when suit was filed. When C-Spine and Wallace filed their suits, they were not the real parties in interest because they had previously assigned away their claims for PIP benefits.

Progressive?[37] The only answer is that C-Spine wanted to require Progressive to litigate a meritless suit until C-Spine, at some later date, decides to do what it should have done before filing the suit: acquire an interest to " 'prosecute[] in the name of the real party in interest.' "[38]

After today's decision, there is little to no doubt that more defendants will be required to engage in protracted litigation, much like the several months of time, expense, and inefficiency that Progressive had to endure while unearthing C-Spine's questionable

---

[37] Unlike the Michigan Court Rules, the Federal Rules of Civil Procedure expressly permit parties to cure real party in interest defects. The advisory committee notes to the federal rules explain that the purpose of FR Civ P 17(a)(3) is

> to be lenient when an *honest* mistake has been made in choosing the party in whose name the action is to be filed . . . . The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an *understandable mistake* has been made. It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period. It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitation period. It is, in cases of this sort, intended to insure against forfeiture and injustice . . . . [FR Civ P 17 (1966 amendment, advisory committee notes) (citations omitted; emphasis added).]

No honest mistake has been made by the parties here. Moreover, that other jurisdictions may allow real party in interest defects to be cured does not mean that meritless litigation in those jurisdictions does not take place as a result.

[38] Quoting *Mich Employers Cas Co*, 218 Mich at 366.

and arguably shady transactions.[39]  Even if our caselaw regarding whether a real party in interest defect may be cured is convoluted, we ought to clean the slate and reaffirm the logic and reasoning of *Miller*, which promotes efficient litigation from the commencement of the action through its conclusion.  Requiring the real party in interest to commence litigation ensures that the litigation will be pursued sincerely and vigorously.[40]

II.  THE ISSUE OF RESCISSIONS ON REMAND TO THE TRIAL COURT

In *Wallace v Suburban Mobility Authority for Regional Transp*, Parie Wallace, unlike C-Spine, also argues that she obtained unilateral rescissions from her medical providers for the right to seek PIP benefits from defendants Suburban Mobility Authority for Regional Transportation (SMART) and Janet Szczotka in the instant litigation.[41]  As noted in the majority opinion, rescission is different from revocation: "[T]he idea of rescission involves the additional and distinguishing element of a restoration of the status quo."[42]  Preliminarily, I agree with the majority opinion's holding that Wallace and her

---

[39] Originally, C-Spine asserted that the counter-assignments were executed before C-Spine brought suit, which would have made C-Spine the real party in interest when it commenced this litigation.  Progressive later learned through discovery, however, that the counter-assignments the trial court initially had relied on were executed *after* the case was filed.  Although these counter-assignments had an effective date prelitigation, the counter-assignments were not executed until after the case was filed by C-Spine.  As the majority opinion notes, several of our colleagues on the Court of Appeals took issue with C-Spine's behavior during discovery in other cases that involved assignments and counter-assignments between C-Spine and factoring companies.

[40] Contrary to the majority opinion's assertion, "the courthouse door" is not "slammed shut" to parties who later become the real party in interest.  Such litigants, however, must commence a new suit after obtaining status as a real party in interest.

[41] Szczotka is not involved in this appeal.

[42] Quoting *Wall v Zynda*, 283 Mich 260, 264; 278 NW 66 (1938) (quotation marks omitted).

medical providers cannot unilaterally declare a "rescission" and apply its effects retroactively to ongoing litigation. As the majority opinion notes, rescission of a contract subject to litigation " 'does not function by automatic operation of the law.' "[43] Rather, it is an equitable remedy that the trial court may grant in its discretion after balancing the equities.[44]

I nonetheless disagree that the trial court, in the exercise of equity, can impose the effect of a rescinded contract on a third party that is wholly uninvolved with the rescinded contract.[45] I thus conclude that the issue of whether Wallace rescinded her assignments is

---

[43] Quoting *Bazzi v Sentinel Ins Co*, 502 Mich 390, 411; 919 NW2d 20 (2018). See also *Wilmore-Moody v Zakir*, 511 Mich 76, 85; 999 NW2d 1 (2023), citing *Bazzi*, 502 Mich at 411.

[44] *Bazzi*, 502 Mich at 410.

[45] The majority opinion disagrees that the equitable remedy of rescission cannot affect the rights of a third party in ongoing litigation that is *wholly uninvolved* with the rescinded contract. In so doing, the majority opinion states that "[n]umerous Michigan cases concern insurers' attempts to rescind a policy on the basis of fraud or misconduct by the policyholder and discuss the effect the rescission may have on third parties." In support of this proposition, the majority opinion relies on *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), and *Bazzi*, 502 Mich 390. But those cases are distinguishable.

For example, in *Bazzi*, the plaintiff was injured while driving a vehicle owned by his mother, third-party defendant Hala Baydoun Bazzi, and insured by the defendant Sentinel Insurance Company. *Id*. at 396. The plaintiff sued Sentinel Insurance for PIP benefits. *Id*. Sentinel Insurance sought and obtained a judgment rescinding the insurance policy on the basis of fraud, and then Sentinel moved for summary disposition of the plaintiff's claim, arguing that rescission of the policy made it void *ab initio* and precluded the plaintiff from recovering under the policy. *Id*. at 397. "The trial court denied the motion on the basis of the innocent-third-party rule, which prevents an insurer from rescinding an insurance policy on the basis of material misrepresentations in the application for insurance as to a claim made by a third party who is innocent of the fraud." *Id*. "After the Court of Appeals denied Sentinel's interlocutory application for leave to appeal, this Court remanded the case to the Court of Appeals for consideration as on leave granted." *Id*. On remand, the Court of Appeals reversed the trial court, holding that the innocent-

immaterial. Even if the assignments are rescinded, Wallace cannot pursue this litigation as the real party in interest against defendants, nonparties that were wholly uninvolved with the assignment contracts.

---

third-party rule did not survive this Court's decision in *Titan Ins Co*. *Id*. at 397-398. This Court affirmed the Court of Appeals' holding that *Titan Ins Co* abrogated the innocent-third-party rule but reversed the portion of the Court of Appeals' opinion holding that Sentinel Insurance was automatically entitled to rescission. *Id*. (remanding the case to the trial court to determine whether rescission was available as an equitable remedy between Sentinel Insurance and the plaintiff).

*Bazzi* held that the trial court was required to balance the equities to determine whether the insurer could rescind Hala's fraudulent insurance policy as it applied to the plaintiff, who was seeking to recover under the insurance policy. *Id*. But *Bazzi* is different from *Wallace* and *Wilmore-Moody*. In *Wilmore-Moody*, this Court held that the insurer's rescission of the plaintiff's insurance policy for fraud did not affect the plaintiff's status, as insured, in ongoing litigation against a third party not involved in or seeking to recover under the rescinded insurance policy. *Wilmore-Moody*, 511 Mich at 88. Similarly, in *Wallace*, plaintiff's "mutual rescissions" of her assignment contracts cannot affect her status as the real party in interest in ongoing litigation against defendants that were wholly uninvolved with her rescinded assignment contracts. *Bazzi* is distinguishable from *Wallace* and *Wilmore-Moody* because the plaintiff in *Bazzi*, although not a signatory to the rescinded insurance agreement, was driving his mother's car, relying on her fraudulent insurance policy while driving it, and was seeking to recover and benefit from that fraudulent rescinded policy. *Titan Ins Co*, another case cited by the majority opinion, is also distinguishable from *Wallace* and *Wilmore-Moody* because the defendant in *Titan Ins Co* was a party to the fraudulent insurance contract from which he was trying to benefit by having Titan Insurance pay the injured couple. *Titan Ins Co*, 491 Mich at 552. In contrast, defendants in *Wallace* are completely uninvolved with Wallace's assignment contracts. Similarly, the defendant Mohammed Zakir in *Wilmore-Moody* was completely uninvolved with the plaintiff's rescinded insurance policy.

13

This case is similar to *Wilmore-Moody v Zakir*.[46]  There, plaintiff Adora Wilmore-Moody was injured after defendant Mohammad Zakir collided with her car.[47]  After defendant Everest National Insurance Company declined to pay benefits to Wilmore-Moody, Everest notified Wilmore-Moody that it would be rescinding her policy because

---

[46] *Wilmore-Moody*, 511 Mich 76.  Although not at issue here, the *Wilmore-Moody* opinion is inadvertently inconsistent regarding the standard of review for rescission.  In its section reciting the applicable standards of review, the opinion states that "the application of an equitable doctrine such as rescission is . . . reviewed de novo."  *Id*. at 83, citing *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 509; 968 NW2d 482 (2021) (stating that "this Court reviews de novo the application of a remedial, equitable doctrine such as equitable subrogation").  But later in the *Wilmore-Moody* opinion we said that rescission "should be granted only in the sound discretion of the court."  *Id*. at 85 (quotation marks and citation omitted).  Although decisions on equitable relief are generally reviewed de novo, *Esurance Prop & Cas Ins Co*, 507 Mich at 509, there are some equitable remedies (such as injunctions) that are reviewed for an abuse of discretion.  See, e.g., *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008).  See also *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 33-34 n 12; 896 NW2d 39 (2016) (noting an inconsistency in the Court of Appeals' caselaw about the standard of review for injunctive relief—de novo versus abuse of discretion—but pointing out that this Court's recent cases had used the abuse-of-discretion standard for review of injunctions).  For purposes of determining the standard of review, rescissions have traditionally aligned with injunctions.  Rescissions and injunctions—unlike equitable relief more generally—are reviewed for an abuse of discretion rather than de novo.  See, e.g., *Bazzi*, 502 Mich at 409-410; *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 31; 331 NW2d 203 (1982); *Amster v Stratton*, 259 Mich 683, 686; 244 NW 201 (1932).  In its recitation of the standard of review, the *Wilmore-Moody* opinion apparently inadvertently cited the de novo standard of review for equitable relief, even though later in the opinion we recognized that rescission is an exception to the general rule and is reviewed for an abuse of discretion.  See *Wilmore-Moody*, 511 Mich at 83, 85.  This, in turn, has caused confusion for lower courts.  See *Sherman v Progressive Mich Ins Co (On Reconsideration)*, ___ Mich App ___, ___; ___ NW3d ___ (September 5, 2024) (Docket No. 364393); slip op at 3 (citing *Wilmore-Moody*, 511 Mich at 83, for the application of both the de novo and abuse-of-discretion standards of review for rescission).  This Court has ordered oral argument on the application to address this question.  *Sherman v Progressive Mich Ins Co*, ___ Mich ___ (May 22, 2025) (Docket No. 167826).

[47] *Wilmore-Moody*, 511 Mich at 80.

14

she had made a material misrepresentation in her insurance application.[48] Wilmore-Moody filed suit, asserting a claim against Everest for first-party PIP benefits and a third-party tort claim against Zakir for his alleged negligence in causing the collision.[49] The trial court granted Everest's motion for summary disposition, concluding that Everest had a right to rescind the policy because of the material misrepresentation Wilmore-Moody had made in her insurance application. Subsequently, Zakir also moved for summary disposition, arguing that Wilmore-Moody was barred from recovering third-party noneconomic damages because once the contract was rescinded, Wilmore-Moody no longer had the required security " 'at the time the injury occurred.' "[50] This Court held that a "rescission of an insurance policy . . . does not operate to alter the past by rendering the insured as having been without no-fault insurance at the time of the accident for purposes of the prohibition contained in MCL 500.3135(2)(c)."[51] Thus, Wilmore-Moody was deemed to have "had insurance 'at the time the injury occurred.' Although Everest later rescinded the policy, that rescission did not alter the past vis-à-vis Zakir."[52]

---

[48] *Id.*

[49] *Id.* at 80-81.

[50] *Id.* at 81, quoting MCL 500.3135(2)(c). See also *Wilmore-Moody*, 511 Mich at 84 (explaining that an injured motorist must have no-fault insurance "to seek third-party noneconomic damages from a negligent tortfeasor").

[51] *Id.* at 88. Thus, Wilmore-Moody was able to bring a claim for third-party noneconomic damages against Zakir even after Wilmore-Moody's insurance policy was rescinded by Everest. Similarly, here, Wallace's rescissions of her assignment agreements do "not operate to alter the past by rendering" Wallace as the real party in interest when she commenced the instant litigation.

[52] *Id.* The decision in *Wilmore-Moody* was not affected by this Court's decision in *Esurance Prop & Cas Ins Co*, 507 Mich 498. In *Esurance Prop & Cas Ins Co*, this Court

15

Similar to *Wilmore-Moody*, rescission of an assignment agreement "does not operate to alter the past by rendering" Wallace as the real party in interest at the time she commenced this litigation against defendants.[53] A "rescission [of her assignment contracts would] not alter the past vis-à-vis" defendants, who are "nonpart[ies] to the contract[s] . . . ."[54] Although a " '[r]escission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been

concluded that "an insurer who erroneously pays PIP benefits may be reimbursed under a theory of equitable subrogation when the insurer is not in the order of priority and the payments are made pursuant to its arguable duty to pay to protect its own interests." *Id*. at 503-504. Although *Esurance Prop & Cas Ins Co* involved the rescission of a no-fault policy, that rescission did not affect the relative positions of any third parties not privy to the insurance contract. In that case, the plaintiff, Roshaun Edwards, was injured while operating a vehicle owned by a nonresident relative, Anthony Robert White II. *Id*. at 504. Edwards sought PIP benefits under a Colorado policy issued to Anthony's mother (Luana Edwards-White), who erroneously stated in her application that she was the vehicle's owner, that she lived in Colorado, and that the vehicle would be garaged in Colorado. *Id*. The policy was later rescinded because of fraud in the procurement. *Id*. at 505. Esurance, which had already paid Edwards's claim for PIP benefits, sought equitable subrogation from the Michigan Assigned Claims Plan (MACP) for reimbursement of the PIP benefits it had erroneously paid to Edwards. *Id*. One question before the Court was whether Esurance was in the order of priority such that there was an insurance policy " 'applicable to [Edwards's] injury' . . . ." *Id*. at 514, quoting MCL 500.3172(1)(a). In concluding that Esurance was not in the order of priority and that there was no policy applicable to the injury, this Court observed that "the vehicle was in fact owned by Anthony, *regardless of the policy's rescission*, and Esurance was not his insurer, which means Esurance again was not in the order of priority." *Esurance Prop & Cas Ins Co*, 507 Mich at 515 (emphasis added). In other words, it made no difference whether Esurance rescinded Luana's policy because she was not the vehicle's owner and, thus, Esurance was never in the order of priority as the insurer of the owner or registrant of the vehicle occupied. Accordingly, the rescission of the no-fault insurance policy at issue in *Esurance Prop & Cas Ins Co* did not affect the relative position of any third parties not privy to the insurance contract—namely, the MACP.

[53] *Wilmore-Moody*, 511 Mich at 88.

[54] *Id*.

16

made,' "[55] "it does not alter reality or act as a DeLorean time machine."[56] At the time Wallace commenced this litigation against SMART and Szczotka, nonparties that were wholly uninvolved with the assignment agreements, she was not the real party in interest.[57] Because a rescission of her assignment agreements would not change this status, I would hold that she cannot pursue this litigation against defendants.

## III. CONCLUSION

In sum, I dissent from the majority opinion's holding that defects in the real party in interest may be cured after the filing of a lawsuit. For the reasons stated in this dissent, I would affirm the Court of Appeals in *Wallace*, and I would reverse the Court of Appeals in *C-Spine Orthopedics*.


Brian K. Zahra


THOMAS and HOOD, JJ., did not participate because the Court considered this case before either assumed office.

---

[55] *Id*. at 84, quoting *Bazzi*, 502 Mich at 409.

[56] *Wilmore-Moody*, 511 Mich at 86.

[57] Wallace's failure to commence this litigation as the real party in interest cannot be changed in this ongoing litigation because defendants were "not a party to the [assignment] contract[s] and did not incur any obligation on the basis of the contract[s], nor did [they] benefit from the contract. Accordingly, [defendants were] entirely unaffected . . . and disconnected from [Wallace's and her medical providers'] discretionary decision[s] to seek rescission of the [assignment] contract[s]. Given that [defendants were] unaffiliated with the contract[s]," defendants' status in the instant litigation may not be affected by the now possible rescissions of those contracts. *Id*. (explaining that a third party wholly uninvolved with a contract may not be affected by the rescission of that contract in ongoing litigation).